ORIGINAL
FILED

07 APR -9 PM 3: 50

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY O̸ͭ DEPUTY

1 | Marilyn Raia, SBN 072320
E-mail: marilyn.raia@bullivant.com
2 | Norman J. Ronneberg, Jr., SBN 68233
E-mail: norman.ronneberg@bullivant.com
3 | BULLIVANT HOUSER BAILEY PC
601 California St. 18th floor
4 | San Francisco, CA 94108
Telephone: 415.352.2700
5 | Facsimile: 415.352.2701

6 | Attorneys for Defendants Maritime Logistics,
Inc. Frank Loving and Blaine Hughes

7

8 UNITED STATES DISTRICT COURT

9 SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 ALAN CARPENTER AND TRACY<br>11 RAGSDALE, individuals,<br><br>12 Plaintiffs,<br>13 vs.<br>14 Tug MICHAEL UHL, her engines, machinery,<br>tackle, equipment, furnishings and<br>15 appurtenances, in rem, and MARITIME<br>LOGISTICS, INC., FRANK LOVING, an<br>16 individual and BLAINE HUGHES, an<br>individual in personam,<br><br>17 Defendants.<br>18 MARITIME LOGISTICS, INC., a corporation;<br>FRANK LOVING; BLAINE HUGHES,<br>19<br>20 Counterclaimants,<br>21 vs.<br>22 ALAN CARPENTER; TRACY RAGSDALE,<br>23 Counterdefendants. | Case No.: 07 CV 0166 -DMS(POR)<br><br>**ANSWER TO VERIFIED COMPLAINT<br>AND COUNTERCLAIM**<br><br><br><br><br><br><br><br>**BY FAX** |

24      Defendants MARITIME LOGISTICS, INC. FRANK LOVING and BLAINE HUGHES

25 answer plaintiffs' verified complaint as follows:

26      1.      Defendants admit that this action is an admiralty maritime action within the

27              meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within the

28              Court's jurisdiction under 28 U.S.C. § 1333.

6076942.1

2. Defendants admit that plaintiffs are individuals. Except as admitted herein, defendants lack sufficient information and belief to answer the allegations of paragraph 2 and on that basis, deny the allegations contained therein.

3. Defendants admit that the tug MICHAEL UHL is an oceangoing tug of approximately 86 feet in length and 82 gross tons and is registered with the United States Coast Guard and bears an official number of 545 092. Except as admitted herein, defendants deny the allegations of paragraph 3.

4. Defendants admit that Maritime Logistics, Inc. is a California corporation with its business address in Creston, CA. Defendants further admit that Maritime Logistics, Inc. is the owner and operator of the tug MICHAEL UHL. Defendant further admits that Maritime Logistics, Inc. conducts business within the Southern District of California. Except as admitted herein, defendants deny the allegations of paragraph 4.

5. Defendants admit that defendant Frank Loving is an individual and resides in Morro Bay, CA. Defendants also admit that Frank Loving is licensed as a boat operator by the United States Coast Guard and has served as the captain of the tug MICHAEL UHL. Except as admitted herein, defendants deny the allegations of paragraph 5.

6. Defendants admit that defendant Blaine Hughes is an individual and resides in California. Defendants also admit that defendant Blaine Hughes is licensed as a boat operator by the United States Coast Guard and has served as the captain of the tug MICHAEL UHL. Except as admitted herein, defendants deny the allegations of paragraph 6.

7. Defendants admit that defendant Maritime Logistics, Inc. contracted to tow the ALBION from San Diego, CA to Winchester Bay, OR. Except as admitted herein, defendants deny the allegations of paragraph 7.

8. Defendants admit that on January 22, 2005, the ALBION was secured to a towline from the tug MICHAEL UHL and that the tow departed San Diego,

1         CA and that at that time, Frank Loving was in command of the tug MICHAEL

2         UHL. Except as admitted, defendants deny the allegations of paragraph 8.

3    9.     Defendants admit that on January 24, 2005, the tow arrived in Morro Bay, CA.

4    10.    Defendants admit that the tow departed Morro Bay, CA on January 30, 2005.

5         Except as admitted, defendants deny the allegations of paragraph 10.

6    11.    Defendants admit that while under tow by the tug MICHAEL UHL, the

7         ALBION took on water, sank in or near Monterey Bay, CA and was not fully

8         recovered. Except as admitted herein, defendants deny the allegations of

9         paragraph 11 and further deny that plaintiffs have been damaged in any

10        amount.

11   12.    Defendants deny that plaintiffs have not established that they have a maritime

12        lien against the tug MICHAEL UHL and deny the allegations of paragraph 12.

13                       **FIRST CAUSE OF ACTION**

14   13.    Defendants reallege and incorporate their responses to the allegations of

15        paragraphs 1 to 12 inclusive as though fully set forth herein.

16   14.    Defendants deny the allegations of paragraph 14.

17   15.    Defendants deny the allegations of paragraph 15.

18   16.    Defendants deny the allegations of paragraph 16 and further deny that

19        plaintiffs have been damaged in any amount.

20   17.    Defendants deny the allegations of paragraph 17 and further deny that

21        plaintiffs have or will be damaged in any amount.

22                      **SECOND CAUSE OF ACTION**

23   18.    Defendants reallege and incorporate their responses to the allegations of

24        paragraphs 1 to 17 inclusive as though fully set forth herein.

25   19.    Defendants admit that on January 21, 2005 Maritime Logistics, Inc. entered

26        into a towage agreement with plaintiffs to tow the ALBION from San Diego,

27        CA to Westchester Bay, OR. Except as admitted herein, defendants deny the

28        allegations of paragraph 19.

20.  Defendants admit that subject to its terms and conditions, the Towage Agreement provided that Maritime Logistics, Inc. would use due diligence to "tender the Tug at the start port/place in a seaworthy condition." Defendants also admit that subject to its terms and conditions, the Towage Agreement provided that neither Maritime Logistics, Inc. nor plaintiffs "would have the right to contract performance or assign its interest in the Towage Agreement without the express permission of the other." Except as admitted herein, defendants deny the allegations of paragraph 20.

21.  Defendants admit that subject to its terms and conditions, the Towage Agreement provides that the parties thereto submit to the exclusive jurisdiction of the United States District Court located in San Diego, CA and that "with further respect to any litigation arising hereunder, the substantially prevailing party in any such action shall be entitled to reasonable attorneys fees." Except as admitted herein, defendants deny the allegations of paragraph 21.

22.  Defendants deny the allegations of paragraph 22.

23.  Defendants deny the allegations of paragraph 23 and further deny that plaintiffs have suffered damages in any amount.

24.  Defendants deny the allegations of paragraph 24 and further deny that plaintiffs have suffered damages in any amount.

25.  Defendants deny the allegations of paragraph 25 and further deny that plaintiffs have suffered damages in any amount.

## THIRD CAUSE OF ACTION

26.  Defendants reallage and incorporate their responses to the allegations of paragraphs 1 to 25 inclusive as though fully set forth herein.

27.  Defendants admit that in the Towage Agreement and subject to its terms and conditions, Maritime Logistics, Inc. warranted that "it shall use due diligence to tender the Tug at the start port/place in a seaworthy condition. Except as admitted herein, defendants deny the allegations of paragraph 27.

6076942.1                                                          4 –

1    28.    Defendants deny the allegations of paragraph 28.

2    29.    Defendants deny the allegations of paragraph 29 and further deny that

3    plaintiffs have been damaged in any amount.

4    30.    Defendants deny the allegations of paragraph 30 and further deny that

5    plaintiffs have or will be damaged in any amount.

6    **FOURTH CAUSE OF ACTION**

7    31.    Defendants reallege and incorporate their responses to the allegations of

8    paragraphs 1 to 30 inclusive as though fully set forth herein.

9    32.    Defendants deny the allegations of paragraph 32.

10    33.    Defendants deny the allegations of paragraph 33.

11    34.    Defendants deny the allegations of paragraph 34 and further deny that

12    plaintiffs have or will be damaged in any amount.

13    **FIFTH CAUSE OF ACTION**

14    35.    Defendants reallege and incorporate their responses to the allegations of

15    paragraphs 1 to 34 inclusive as though fully set forth herein.

16    36.    Defendants deny the allegations of paragraph 36.

17    37.    Defendants deny the allegations of paragraph 37.

18    38.    Defendants deny the allegations of paragraph 38 and further deny that

19    plaintiffs have or will be damaged in any amount.

20    **SIXTH CAUSE OF ACTION**

21    39.    Defendants reallege and incorporate their responses to the allegations of

22    paragraphs 1 to 38 inclusive as though fully set forth herein.

23    40.    Defendants deny the allegations of paragraph 40.

24    **SEVENTH CAUSE OF ACTION**

25    41.    Defendants reallege and incorporate their responses to the allegations of

26    paragraphs 1 to 40 inclusive as though fully set forth herein.

27    42.    Defendants admit that there is an actual controversy between plaintiffs and

28    defendants regarding their legal rights and duties with respect to the tug

1    MICHAEL UHL and the ALBION. Except as admitted herein, defendants

2    deny the allegations of paragraph 42 and further deny that plaintiffs have or

3    will suffer any damages.

4    43.    Paragraph 43 does not contain any allegations against defendants. To the

5    extent that it may be construed otherwise, defendants deny the allegations of

6    paragraph 43.

7    ### FIRST AFFIRMATIVE DEFENSE

8    As and for a first further separate and affirmative defense, defendants allege that

9    plaintiffs' complaint fails to state a claim upon which relief may be granted.

10   ### SECOND AFFIRMATIVE DEFENSE

11   As and for a second further separate and affirmative defense, defendants allege that

12   plaintiffs may not be the real parties in interest with respect to all of their allegations and claims

13   against defendants.

14   ### THIRD AFFIRMATIVE DEFENSE

15   As and for a third further separate and affirmative defense, defendants allege that

16   plaintiffs breached the Towage Agreement in various ways including but not limited to failing

17   to use due diligence to "tender the tow at the start port/place in a seaworthy condition."

18   ### FOURTH AFFIRMATIVE DEFENSE

19   As and for a fourth further separate and affirmative defense, defendants allege that

20   plaintiffs failed to mitigate their damages, which damages are denied.

21   ### FIFTH AFFIRMATIVE DEFENSE

22   As and for a fifth further separate and affirmative defense, defendants allege that if

23   plaintiffs suffered any damages, which damages are denied, said damages resulted from a force

24   majeure as defined in the Towage Agreement.

25   ### SIXTH AFFIRMATIVE DEFENSE

26   As and for a sixth further separate and affirmative defense, defendants allege that if

27   plaintiffs suffered any damages, which damages are denied, said damages proximately resulted

28

1   from the acts and/or omissions of plaintiffs, and any award in their favor and against defendants

2   must be reduced proportionately by the percentage of fault attributed to plaintiffs.

### SEVENTH AFFIRMATIVE DEFENSE

4     As and for a seventh further separate and affirmative defense, defendants allege that if

5   plaintiffs now contend that the ALBION is worth more than it was insured for by plaintiffs' hull

6   and machinery insurer, plaintiffs misrepresented the value of the ALBION when entering into

7   the towage agreement with Maritime Logistics, Inc.

### EIGHTH AFFIRMATIVE DEFENSE

9     As and for an eighth further separate and affirmative defense, defendants allege that if

10   plaintiffs suffered any damages, which damages are denied, said damages proximately resulted

11   from the acts and/or omissions of third parties for which defendants are not vicariously liable.

### NINTH AFFIRMATIVE DEFENSE

13     As and for a ninth further separate and affirmative defense, defendants Maritime

14   Logistics and Frank Loving allege that they are entitled to limit their liability to the value of the

15   tug MICHAEL UHL.

### TENTH AFFIRMATIVE DEFENSE

17     As and for a tenth further separate and affirmative defense, defendants allege that

18   plaintiffs have unclean hands.

19     WHEREFORE, defendants pray that plaintiffs' complaint be dismissed with prejudice

20   and that defendants be awarded their costs of suit, reasonable attorneys fees and such other

21   relief as the Court may deem just.

### COUNTERCLAIM

#### First Cause of Action

#### (Breach of towage agreement)

25     As their counterclaim against plaintiffs and counterdefendants Alan Carpenter and Tracy

26   Ragsdale, counterclaimants Maritime Logistics, Inc. Frank Loving and Blaine Hughes allege:

27     1. The Court has original jurisdiction over this counterclaim under 28 U.S.C.§ 1333 in

28   that it involves a maritime contract, namely, a towage contract. The Court also has original

1   jurisdiction over this counterclaim under 28 U.S.C. § 1332 in that it involves a dispute between

2   citizens of different states and the amount in controversy exceeds $75,000. The Court also has

3   supplemental jurisdiction over this counterclaim under 28 U.S.C. § 1367 because it arises out of

4   and is related to the matters set forth in counterdefendants' and plaintiffs' complaint.

5      2. On information and belief, counterclaimants allege that counterdefendants are citizens

6   of the state of Colorado. Counterclaimants are citizens of and/or maintain their principal place

7   of business in the state of California. The amount in controversy exceeds $75,000.

8      3. On January 21, 2005, counterclaimant Maritime Logistics, Inc. and counterdefendants

9   entered into a written towage agreement pursuant to which counterclaimants were to tow

10   counterdefendants' vessel, ALBION, from San Diego, CA to Winchester Bay, OR. A copy of

11   said towage agreement is attached to this counterclaim as Exhibit "A".

12      4. The towage agreement provided in relevant part:

13        3. Warranties and Performance:

14        B. **Customer** [counterdefendants] shall use due diligence to
tender the Tow at the start port/place in a seaworthy condition,

15   properly documented and with all licenses and permits required of
either the Tow or cargo; the Tow shall be equipped with

16   navigational lights, towing bitts, chain bridle, towing day shape,
navigation equipment and emergency wire or other retrieval

17   system; the Tow shall be capable of being towed at speeds and
under the conditions normal for comparable tows; each port

18   and/or berth to/from which the Tug is expected to tow the Tow
shall be safe for both Tug and Tow at all stages of tide; and

19   Customer has informed Owner of all special circumstances ands
[sic] conditions applicable to Tow or cargo which may affect

20   Owners performance of services hereunder.

21      C. **Owner/Customer** Neither party shall be required to inspect
any vessel or property of the other, and no inspection including

22   comments or recommendations, shall create liabilities or
responsibilities for any party. Other than the foregoing, neither

23   party makes nor shall either be held to any other warranty of any
type or nature whatsoever, including, without limitation, any

24   warranty of seaworthiness or warranty of workmanlike service.

25      5. In breach and violation of the towage agreement, counterdefendants tendered the

26   ALBION to counterclaimants for towage but failed to exercise due diligence to make said vessel

27   seaworthy and failed to inform counterclaimants of conditions, special circumstances and

28   defects in the ALBION.

1      6. As a proximate result of the breach of the towage agreement by counterdefendants,

2 the ALBION took on water and sank in Monterey Bay, CA while under tow.

3      7. As a proximate result of the breach of the towage agreement and sinking of the

4 ALBION, the United States has asserted a claim against counterclaimants for expenses incurred

5 by the United States in connection with pollution abatement, removal of the wreck of the

6 ALBION, natural resources damage, penalties, etc. Counterclaimants have also incurred

7 expenses and fees in connection with the claim of the United States and have lost their

8 equipment. Counterclaimants' total damages are in an amount to be established but estimated to

9 be in excess of $1 million.

10      WHEREFORE, counterclaimants pray as hereinafter set forth.

11               **Second Cause of Action**

12                  **(Fraud)**

13      8. Counterclaimants incorporate the allegations of paragraphs 1, 2, and 3 of the First

14 Cause of Action of their counterclaim as though fully set forth.

15      9. On or before January 21, 2005, counterdefendants made certain representations to

16 counterclaimants regarding the ALBION including but not limited to her condition,

17 seaworthiness and value.

18      10. The representations made by counterdefendants were false and counterdefendants

19 knew they were false. Counterdefendants made said representations with the intent that

20 counterclaimants would rely on them and enter into the towage agreement.

21      11. Counterclaimants reasonably relied on the false representations made by

22 counterdefendants to their detriment and undertook the tow of the ALBION without knowing

23 certain critical true facts, conditions and special circumstances.

24      12. During the tow from San Diego, CA to Winchester Bay, OR, the ALBION took on

25 water and sank in Monterey Bay, CA. As a proximate result of the sinking, the United States

26 has asserted a claim against counterclaimants for expenses incurred by the United States in

27 connection with pollution abatement, removal of the wreck of the ALBION, natural resources

28 damage, penalties, etc. Counterclaimants have also incurred expenses and fees in connection

1 | with the claim of the United States and have lost their equipment. Counterclaimants' total

2 | damages are in an amount to be established but estimated to be in excess of $1 million.

3 | Wherefore, counterclaimants pray as hereinafter set forth.

4 | **Third Cause of Action**

5 | **(Negligence)**

6 | 13. Counterclaimants incorporate the allegations of paragraphs 1, 2, and 3 of the First

7 | Cause of Action of the counterclaim as though fully set forth herein.

8 | 14. Thereafter counterdefendants negligently prepared the ALBION for the tow from

9 | San Diego, CA to Winchester Bay, OR in various ways including but not limited to ballasting

10 | the ALBION with diesel instead of water, negligently failing to strengthen the hull for the open

11 | ocean voyage, and negligently failing to assure that the ALBION was seaworthy and watertight.

12 | 15. As a proximate result of the negligence of counterdefendants, the ALBION took on

13 | water and sank in Monterey Bay, CA. As a proximate result of the sinking of the ALBION, the

14 | United States has asserted a claim against counterclaimants for expenses incurred by the United

15 | States in connection with pollution abatement, removal of the wreck of the ALBION, natural

16 | resources damage, penalties, etc. Counterclaimants have also incurred expenses and fees in

17 | connection with the claim of the United States and have lost their equipment.

18 | Counterclaimants' total damages are in an amount to be established but estimated to be in

19 | excess of $1 million.

20 | Wherefore, counterclaimants pray as hereinafter set forth.

21 | **Fourth Cause of Action**

22 | **(Negligent misrepresentation)**

23 | Counterclaimants incorporate the allegations of paragraphs 1, 2, and 3 of the First Cause

24 | of Action as though fully set forth herein.

25 | 16. On or before January 21, 2005, counterdefendants made certain representations to

26 | counterclaimants regarding the ALBION including but not limited to her condition,

27 | seaworthiness and value.

28 |

6076942.1

– 10 –

ANSWER TO VERIFIED COMPLAINT AND COUNTERCLAIM

17. The representations made negligently by counterdefendants unreasonably and without due care. Said representations were incorrect. Counterdefendants made said representations with the intent that counterclaimants would rely on them.

18. Counterclaimants reasonably relied on the incorrect representations made by counterdefendants, to their detriment and undertook the tow of the ALBION without knowing certain critical true facts, conditions and special circumstances.

19. During the tow from San Diego, CA to Winchester Bay, OR, the ALBION took on water and sank in Monterey Bay, CA. As a result of the sinking, the United States has asserted a claim against counterclaimants for expenses incurred by the United States in connection with pollution abatement, removal of the wreck of the ALBION, natural resources damage, penalties, etc. Counterclaimants have also incurred expenses and fees in connection with the claim of the United States and have lost their equipment. Counterclaimants' total damages are in an amount to be established but estimated to be in excess of $1 million.

### Fifth Cause of Action

### (Tort of Another)

21. Counterclaimants incorporate the allegations of paragraphs 1, 2, and 3 of the First Cause of Action as though fully set forth herein.

22. The United States has made claim against counterclaimants for various types of damages including pollution abatement, removal of the wreck of the ALBION, damage to natural resources, penalties, etc. The claims of the United States were solely the result of the negligent acts and/or omissions of counterdefendants and were not the result of any negligent acts and/or omissions of counterclaimants. Further, the claims of the United States are related to the ALBION and not to the tug MICHAEL UHL.

23. The United States has made claim against counterclaimants when it should have made claim against counterdefendants. Counterclaimants may be required to pay damages to the United States when, in fact, any damages suffered by the United States should be paid by counterdefendants. Therefore, pursuant to the doctrine of Tort of Another, counterclaimants are entitled to recover from counterdefendants any amount that counterclaimants are required to pay

ANSWER TO VERIFIED COMPLAINT AND COUNTERCLAIM

1  to the United States including attorneys fees and costs. Said damages including attorneys fees

2  and costs have not been established but are estimated to exceed $1 million.

3  **Sixth Cause of Action**

4  **(Implied Indemnity)**

5      24. Counterclaimants incorporate the allegations of paragraphs 21 and 22 of the Fifth

6  Cause of Action as though fully set forth herein.

7      25. The claims of the United States were proximately and solely caused by the negligent

8  acts and/or omissions and/or breach of contract by counterdefendants and were neither caused

9  nor contributed to by any negligent acts and/or omissions and/or breach of contract by

10  counterclaimants.

11      26. Therefore, counterclaimants are entitled to indemnity both implied at law and in

12  equity from counterdefendants for the amount the counterclaimants are obligated to pay the

13  United States.

14      Wherefore, counterclaimants pray as hereinafter set forth.

15  **Seventh Cause of Action**

16  **(Contribution)**

17      27. Counterclaimants incorporate the allegations of paragraph 24 of the Fourth Cause of

18  Action as though fully set forth herein.

19      28. If counterclaimants are not entitled to complete indemnification from

20  counterdefendants, then they are entitled to contribution from counterdefendants in the amount

21  that represents counterdefendants' percentage of fault as compared to the total fault of all parties

22  which caused or contributed to the damages claimed by the United States.

23  ///

24  ///

25  ///

26  ///

27  ///

28

1      WHEREFORE, counterclaimants pray that the Court enter judgment in their favor and

2  against counterdefendants in the amount proved at trial and that counterclaimants be awarded

3  their costs of suit, attorneys fees and such other relief as the Court may deem just.

4

DATED: April 9, 2007

5

6                              BULLIVANT HOUSER BAILEY PC

7

8                         By _____
                              Marilyn Raia

9                            Norman J. Ronneberg, Jr.

10                      Attorneys for Tug Michael Uhl

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I, Frank Loving, declare that:

I have read the foregoing Answer to Verified Complaint and Counterclaim and know the contents thereof. The matters contained therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this __7__ day of April 2007 at Morro Bay, California.

Frank Loving

## VERIFICATION

1

2   I, Blaine Hughes   declare that:

3   I have read the foregoing Answer to Verified Complaint and Counterclaim and know the

4   contents thereof.  The matters contained therein are true.

5   I declare under penalty of perjury under the laws of the State of California that the

6   foregoing is true and correct.

7   I declare under penalty of perjury under the laws of the State of California that the

8   foregoing is true and correct.

9   Executed this ___7___ day of April 2007 at Morro Bay, California.

10

11

12                                              _____
                                                Blaine Hughes
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6078725.1                       – 1 –
                            **VERIFICATION**

1

## VERIFICATION

2     I, Frank Loving, declare that:

3     I am the President of Maritime Logistics, Inc. and am authorized to make this

4 verification on behalf of defendant Maritime Logistics, Inc. I have read the foregoing Answer

5 to Verified Complaint and Counterclaim and know the contents thereof. The matters contained

6 therein are true.

7     I declare under penalty of perjury under the laws of the State of California that the

8 foregoing is true and correct.

9     Executed this __9__ day of April 2007 at Morro Bay, California.

10

11                              _Frank Loving_____

12                              Frank Loving

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6078726.1                         ~ 1 ~
                              VERIFICATION

# EXHIBIT A

# Standard Towage Agreement

| OWNER | CUSTOMER |
|---|---|
| **Name** Maritime Logistics | Alan Carpenter  Tracy Ragsdale |
| **Address** PO Box 426<br>Creston CA 93432 | 1852 N. Santa Margarita dr.<br>Fallbrook Ca 92028 |
| **Contact** Frank Loving | |
| **Phone** 805 - 431 - 7393 | 760 451 9850 |
| **Fax** 805 – 772 - 8867 | 520 661 8900 / 8800 |

| TUG | TOW |
|---|---|
| **Name** Michael Uhl | De Fever Trawler |
| **O.N.** 545092 | ON # CF 3312SA |
| **Length** 90' over all | 52' |
| **Width** 24' | 17' |
| **Draft** 10' | 11' |
| **H.P.** 830 | 500 |
| **START** | **DESTINATION** |
| **Port/Place** San Diego California | Salmon Harbor Marina<br>Winchester bay Or. 97462<br>541 271 3407 |
| **Date/Time** | |

**Standby Rate**

Tow price $ 36,000.00

**Special Instructions**

# Standard Towage Agreement

Owner and Customer, identified above, agree as follows:

1. **Basic Agreement:** Owner shall furnish the tug identified on page one ("Tug") for the purpose of towing XXXXXX identified on page one ("Tow") from XXXXXXX to XXXXXXXXX

2. **Hire, Fuel Costs and Other Charges:**

   _____

   Signature

   A. Hire:( )Customer shall pay Owner the Rate as indicated above, which shall be deemed irrevocably earned upon commencement of the voyage, Tug and/or Tow not lost.

   B. **Hire shall be paid as follows:**

   Prior to commencement of service.
   ( ) Within 15 days following Owners invoice, which shall be sent to Customers address as invoiced.
   C. ( ) Other: 50% of total charged rate to be paid upon execution of this agreement, balance due net 30 from invoice
   D. ( ) Hire includes all fuel and lube oil used by Tug.
   ( ) Customer shall pay for fuel and lube oil used in addition to Hire.
   ( ) Hire is based on an average fuel cost of _$_ per gallon. Customer shall reimburse Owner for any increase in cost of fuel actually consumed; likewise, Owner will credit Customer for any decrease in cost of fuel actually consumed. The actual cost of fuel shall be determined by invoices paid for fuel consumed.

2



D. **Other Charges:** Customer shall pay or reimburse Owner for all charges directly applicable to the Tow and the cargo thereon, as well as all port charges, dockage, wharfage, pilotage, entry and other custom fees, assist towage, canal tolls, lock fees, agencies, taxes, duties and similar charges routinely incident to the towage services contemplated by this agreement. To the extent Owner Arranges for the foregoing services or advances, it does so only as an agent for Customer. Any charges applicable to the Tug only and not applicable to the Tow or its cargo shall be for the account of Owner.

E. **Payment/Interest:** Hire and other charges shall be payable without deduction or setoff to Owner's business office or as otherwise directed by Owner. Interest on hire and charges which are due but have not been paid shall accrue at the rate of 1.5% per month until fully paid.

3. **Warranties and Performance:**

A. **Owner:** Owner warrants that it shall use due diligence to tender the Tug at the start port/place in a seaworthy condition, properly equipped, documented and with all licenses and permits routinely required for the anticipated voyage; the Tug shall be at the start port/place on the start time/date indicated on page one; the Tug shall use reasonable efforts to prosecute the voyage with the dispatch, but there is no guarantee of particular speed or arrival time/date; the Tug shall be capable of towing the Tow at such speed as wold normal for comparable tows; and, Owner has informed Customer of all special circumstances and conditions applicable to the Tug which may affect performance of services hereunder.



B. **Customer:** Customer warrants it shall use due diligence to tender the Tow at the start port/place in a seaworthy condition, properly documented and with all licenses and permits required of either the Tow or cargo; the Tow shall be ready to sail on the start time/date indicated on page one, and the Tow shall be equipped with navigational lights, towing bitts, chain bridle, towing day shape, navigation equipment and emergency wire or other retrieval system; the Tow shall be capable of being towed at speeds and under the conditions normal for comparable tows; each port and/or berth to/from which the Tug is expected to tow the Tow shall be safe for both Tug and Tow at all stages of tide; and Customer has informed Owner of all special circumstance ands conditions applicable to Tow or cargo which may affect Owners performance of services hereunder.

3




C. **Owner/Customer:** Neither party shall be required to inspect any vessel or property of the other, and no inspection, including comments or recommendations, shall create liabilities or responsibilities for any party. Other than the foregoing, neither party makes nor shall either be held to any other warranty of any type or nature whatsoever, including, without limitation, any warranty of seaworthiness or warranty of workmanlike service.

4. **Liberties:** At any time, the Tug may; go to the assistance of other vessels in distress for purposes of saving life and/or property; call at any port for fuel, repairs, supplies, or other necessaries if reasonably required for the safe completion of services; and load, discharge, engage or disengage persons or property if necessitated by emergency or otherwise reasonably required for safe completion of services. In the event of assistance for purpose of saving life and property, Owner and the master of the Tug shall make reasonable efforts to leave the Tow in a position of safety. Customer shall have no right to share in salvage.

5. **Tandem Tows:**
   ( ) Tandem tows shall be permitted hereunder.
   ( ) Tandem tows shall not be permitted hereunder.

6. **Substitution:** At any time, Owner may be substitute a reasonable comparable vessel for the Tug and Customer may substitute a reasonable comparable vessel for the Tow. No such substitution however, shall diminish a party's responsibility to the other without the express written permission of that other party. Customer shall not have the right to change the destination port/place or any additional ports/places of call for purposes of loading or discharging cargo without Owners written consent.

7. **Cargo Handling:** To the extent available, Customer may utilize Owners crew to assist with cargo handling and related tasks. While so employed, Owners crew shall be completely under the supervision, direction and control of Customer, and not the Owner, with Customer to defend, indemnify and to hold Owner harmless, and to be responsible for all liabilities resulting therefrom except to the extent of payroll, withholding, employee benefit and similar direct employee obligations, which shall remain with Owner, Customer shall reimburse Owner for the use of Owners crew at the cargo handling rate specified as $35.00/hr.

8. **Special Circumstances:**

   A. **Disability/Breakdown of Tug:** Should the Tug become disabled, breakdown or otherwise become unable to fully perform the services contemplated hereunder, and should such disability, breakdown, etc. either prevent further performance of services hereunder or continue for a period of more than 12 hours, Customer may:

      1. terminate this agreement and engage another Tug to continue performance, in which event hire shall cease as of the date and time the disability/breakdown first began; or

4

2. require Owner to complete performance, whether by substitute or otherwise, with hire to remain suspended from the date and time the disability/breakdown first began until resumption of towage services.

B. **Disability/Breakdown of Tow:** Should the Tow become disabled, breakaway or become unfit to continue, the Tug master shall render such assistance as he/she deems reasonable under the circumstances, including the right to deviate to affect repairs, obtain supplies, restow cargo, etc., with hire to continue without interruption. Should the Tug be unable to retrieve the Tow and/or place it in such a condition that the voyage can safely continue, Customer shall be so notified and the Tug shall either take the Tow to the nearest safe place or stand by the Tow until other assistance is rendered, with hire to continue to accrue so long as Customer requests the Tug stand by and at least until the Tow is in a position of safety and Tug has returned to the start port/place.

C. **Total loss of Tow:** Should the tow become totally lost, the Tug shall be deemed released from the service hereunder.

9. **Liability/Insurance/Indemnity:**

A. **Intent:** It is the intent of the parties that the insurance policies identified in Section 9(B)(1-4) shall cover all losses, damages, claims, liabilities and suits incident to the services being performed, and that the parties shall look solely to such Insurances rather than maintain claims against each other, with the exception of negligence or fault. To that end, the parties agree to procure and maintain the following Insurances, to promptly submit and prosecute claims against such Insurances, and to look solely to such Insurances for recovery, except as provided in Section 7. The hire rate charged by the Owner is based in part on the allocation of liability and the insuring obligations set forth in this section.

B. **Insurances:**
1. **Owner:** Owner shall procure and maintain at its sole expense the following Insurances with respect to the Tug:
    a. Hull and machinery insurance pursuant to Pacific Coast Tug and Barge Form 1979 or equivalent, in amount equal to the full actual value(s) thereof;
    b. Protection and indemnity insurance on a form of policy at least as broad as SP-23, with minimum limits of $2,000,000 per occurrence; and
    c. To the extent mandated by applicable laws, pollution and environmental liability insurance, including coverage for damages, cleanup and restoration costs, in an amount not less than limits required by such laws.



2. **Customer:** Customer shall procure and maintain at its sole expense

5

*Allstate Boat*
*Ins. policy*
*# 0641678J4*
*TP*

a. Hull and Machinery insurance on the Tow pursuant to Pacific Coast Tug and Barge Form 1979 or equivalent in amounts equal to the full actual value(s) thereof;

b. Protection and Indemnity insurance, including crew coverage on a form of policy at least as broad as SP-23, with limits of $2,000,000 per occurrence;

c. All risk cargo insurance on all property/cargo carried aboard the Tow, in amounts equal to the full actual values thereof, with the valuation clause for the cargo policy to include cost, freight and insurance; and

d. To the extent mandated by applicable laws, pollution and environmental liability insurance, including coverage for damages, cleanup and restoration costs, in an amount not less than limits required by such laws;

e. Customer may insure liabilities for injury, illness and/or death of employees through alternate insuring forms with the written permission of Owner, so long as Customer's obligation pursuant to Section (9)(B)(2)(b), and elsewhere in this Section are not lessened.

2. **General Provisions:** The Party required to provide any insurance coverage shall be solely responsible for payment of premiums and deductibles applicable to that insurance. Prior to Start Date/Time, each party shall provide the other with certificates of insurance confirming the existence of the above aforementioned policies. If tandem tows are authorized herein pursuant to Section 5 above, the Insurances required shall be endorsed to allow tandem tows. No act shall constitute a waiver of the foregoing, which may be waived only in writing signed both parties.

3. **Failure of Insurance:** In the event that a party fails to procure a required insurance, an insurance fails for any reason (including breach of condition or warranty), or an insurer otherwise refuses or is unable to pay, the party required to procure such insurance shall be deemed the insurer or self-insurer, shall accept and pay all claims which would otherwise be covered by the failed insurance, and shall indemnify and hold harmless (including costs and legal fees) the other party of and from loss, damage, claim, liability and/or suit which would have been covered by such insurance.

C. **Injury to Employee/Personal Property Damage:** Subject to the above aforementioned liability allocation and insurance requirements which shall be deemed primary, and only in the event a loss or damage claim, liability and/or suit does not fall within scope of a required insurance, or in conjunction with Section 7, Owner and Customer shall then each separately be responsible for, and shall indemnify and hold harmless the other of and from (including legal fees and costs): bodily illness, injury and/or death claims of their employees and the employees of their subcontractors, and/or any loss, damage, claim, liability and/or suit arising out of or relating to personal property owned by a party with Owner specifically responsible for

6

the following Insurances with respect to the Tow and/or cargo:

a. Hull and Machinery insurance on the Tow pursuant to Pacific Coast Tug and Barge Form 1979 or equivalent in amounts equal to the full actual value(s) thereof;

b. Protection and Indemnity insurance, including crew coverage on a form of policy at least as broad as SP-23, with limits of $2,000,000 per occurrence;

c. All risk cargo insurance on all property/cargo carried aboard the Tow, in amounts equal to the full actual values thereof, with the valuation clause for the cargo policy to include cost, freight and insurance; and

d. To the extent mandated by applicable laws, pollution and environmental liability insurance, including coverage for damages, cleanup and restoration costs, in an amount not less than limits required by such laws.

e. Customer may insure liabilities for injury, illness and/or death of employees through alternate insuring forms with the written permission of Owner, so long as Customer's obligation pursuant to Section (9)(B)(2)(b), and elsewhere in this Section are not lessened.

2. **General Provisions:** The Party required to provide any insurance coverage shall be solely responsible for payment of premiums and deductibles applicable to that insurance. Prior to Start Date/Time, each party shall provide the other with certificates of insurance confirming the existence of the above aforementioned policies. If tandem tows are authorized herein pursuant to Section 5 above, the Insurances required shall be endorsed to allow tandem tows. No act shall constitute a waiver of the foregoing, which may be waived only in writing signed both parties.

3. **Failure of Insurance:** In the event that a party fails to procure a required insurance, an insurance fails for any reason (including breach of condition or warranty), or an insurer otherwise refuses or in unable to pay, the party required to procure such insurance shall be deemed the insurer or self-insurer, shall accept and pay all claims which would otherwise be covered by the failed insurance, and shall indemnify and hold harmless (including costs and legal fees) the other party of and from loss, damage, claim, liability and/or suit which would have been covered by such insurance.

C. **Injury to Employee/Personal Property Damage:** Subject to the above aforementioned liability allocation and insurance requirements which shall be deemed primary, and only in the event a loss or damage claim, liability and/or suit does not fall within scope of a required insurance, or in conjunction with Section 7, Owner and Customer shall then each separately be responsible for, and shall indemnify and hold harmless the other of and from (including legal fees and costs): bodily illness, injury and/or death claims of their employees and the employees of their subcontractors, and/or any loss, damage, claim, liability and/or suit arising out of or relating to personal property owned by a party with Owner specifically responsible for

6

the Tow(s) and all property thereon. In furtherance thereof, each party waives any immunity from suit afforded it be any workers compensation of similar stature.

**D. Residual Liability/Indemnity:** In the event the Insurances identified in Section 9(B)(1-4) above do not cover a given loss, damage, claim, liability and/or suit (other than by virtue of the failure of insurance provision set forth in Section 9(B)(4) above), and except for the specific liabilities described in Section 9(C) immediately above the parties allocate all other liabilities and indemnity based upon their respective degree of legal fault.

10. **Force Majeure:** Neither Owner nor Customer shall be responsible for delay, failure to perform or complete performance if the reason for such arises from: act of God: act, neglect or default of master, mariner, pilot or servant in the navigation or management of Tug, Tow or any towing equipment; fire, unless caused by actual fault of a privy to a party: perils, dangers and accidents if the sea or other navigable waters; act of war; act of public enemies; arrest or restraint of princes, rulers or people; seizure under legal process; quarantine restrictions act or omission of the other party, it's agents or representatives; strikes, lockouts, stoppage or restraint of labor from whatever cause, whether partial or general; riots and civil commotion; breakdown or latent defects involving hull machinery, equipment, lines, etc., not discoverable by due diligence; and any cause arising without actual fault and privity of a party or over which that party does not have direct control.

11. **Limitations of Liability:** This agreement shall not be deemed a personal contract or otherwise operate to deprive Owner or Customer (or the owner, etc. of any substituted vessel used in the performance of service hereunder) of any benefit allowed by any statute, regulation or other law allowing ship owners to limit their liability, and nothing in this Agreement shall be deemed a waiver of any right granted by any such statute, regulation and/or law.

7

12. **Consequential damages:** Except as provided herein, neither Customer, Owner Tug, Tow, nor any person, entity or vessel relative to this Agreement shall be responsible for indirect, consequential or special damages, including extra expenses, loss of profits, loss of use, delay or damage consequential upon loss of use, whether resulting from negligence, breach of contract, or otherwise, even if the possibility was foreseeable by Customer, Owner or any other person or entity.

13. **Extension:** All exceptions, exemptions, defenses, immunities, limitations of liability, privileges and conditions granted or provided by this Agreement or by any applicable statute for the benefit of Owner or Customer shall be extended to and for the benefit of the Tug, Tow and any substituted vessel for the Tug, as well as their respective owners, demise charters, operators, master, officers and crew, and shall further be extended to and for the benefit of all corporations parent of, subsidiary to, affiliated with or under the management of Owner or Customer, as well as their respective directors, officers, employees and agents.

14. **Owner's lien:** Owner shall have a lien upon the Tow and any cargo carried thereon, which shall survive delivery, to secure payment of hire and charges owned by Customer pursuant to this agreement.

15. **General Average Preclusion:** Notwithstanding Rule B of the York-Antwerp Rules 1994, Tug and Tow, Owner and Customer, shall be deemed separate interests not engaged in common adventure.

16. **Subcontracting/Assignment:** Neither Owner nor Customer shall have the right to subcontract performance or assign its interest in this Agreement without the express written permission of the other.

17. **Governing Law/Jurisdiction:** This agreement shall be governed by the general maritime law of the United States, or by the laws of the State of California in the event there is no applicable general maritime rule of law. The parties submit to the exclusive jurisdiction of the United States District Court located in San Diego, California, with respect to any litigation arising out of this Agreement or out of the performance of services hereunder. With further respect to any litigation arising hereunder, the substantially prevailing party in any such action shall be entitled to its reasonable attorney's fees.

18. **Counterparts/Facsimile Signatures:** This Agreement may be executed in two or more counterparts, each of which will be deemed original and all of which together will constitute the same Agreement, whether or not all parties execute each separate counterpart, a facsimile signature shall be equivalent to an original signature.

8

19. **Entire Agreement/Neutral Construction/Headings/Severance:** *This* document constitutes the entire Agreement between the parties and expressly supersedes and negates any prior agreements, written or oral. This Agreement may not be modified or amended except by a writing signed by both parties. This Agreement shall be construed neutrally and as the commemoration of the mutual assent of both parties, rather than for or against either party. The headings used herein are for reference only and shall not be construed to give any substantive meaning to this Agreement. A severance of any Section of this Agreement does not void, cancel or nullify any remaining Sections of this Agreement, and the remainder of the Agreement remains in full force and effect

Owner
Maritime Logistics

By: _____

Its: _____

Date: 1/21/05

Customer

By: _____

Its: _____

Date: 1/21/05

9

# Standard Towage Agreement

### OWNER

Name

Address

Contact

Phone

Fax

### TUG

Name

O.N.

Length

Width

Draft

H.P.

### START

Port/Place

Date/Time

Standby Rate

Tow price

Special Instructions

### CUSTOMER

### TOW

### DESTINATION

I

1 | **PROOF OF SERVICE**

2 | *Alan Carpenter, et al. vs. Tug MICHAEL UHL, et al.*

3 | U.S. District Court, Southern District of California, Case No.: 07 CV 0166 DMS POR

4 | I am employed in the City and County of San Francisco by the law firm of Bullivant Houser Bailey PC ("the business"), 601 California Street, Suite 1800, San Francisco, CA 94108.

5 | I am over the age of 18 and not a party to this action. On April 9, 2007, I served the document(s) entitled:

6 | **ANSWER TO VERIFIED COMPLAINT AND COUNTERCLAIM**

7 | upon the following parties:

8 | Robert Wolfe
ENGSTROM, LIPSCOMB & LACK

9 | 10100 Santa Monica Blvd., 16th Flr.

10 | Los Angeles, CA 90067
Tel.: (310) 552-3800

11 | Fax: (310) 552-9434

12 | Alan Nakazawa
Dena Aghabeg

13 | COGSWELL NAKAZAWA & CHANG, LLP

14 | 444 West Ocean Blvd., Suite 1250
Long Beach, CA 90802-8131

15 | Tel.: (562) 951-8668
Fax: (562) 951-3933

16 |

17 | *Attorneys for Plaintiffs*
*Alan Carpenter and Tracy Ragsdale*

18 |

19 | **(X)**  **BY MAIL** (CCP § 1013a): I am readily familiar with the ordinary practice of the

20 | business with respect to the collection and processing of correspondence for mailing with the United States Postal Service. I placed true and correct copies of the above-titled

21 | document(s) in envelopes addressed as above, with first class postage thereon fully prepaid. I sealed the aforesaid envelopes and placed them for collection and mailing by

22 | the United States Postal Service in accordance with the ordinary practice of the business. Correspondence so placed is ordinarily deposited by the business with the United States

23 | Postal Service on the same day.

24 | **( )**  **BY FACSIMILE TRANSMISSION** (CRC 2008(e)): I transmitted the documents by

25 | facsimile transmission by placing them in a facsimile machine (telephone number 415-352-2701) and transmitting them to the facsimile machine telephone numbers listed

26 | above. A transmission report was properly issued by the transmitting facsimile machine. Each transmission was reported as complete and without error. A true and correct copy

27 | of the transmission report is attached hereto.

28 |

6078751.1

– 1 –

PROOF OF SERVICE

12010629.tif - 4/9/2007 2:16:10 PM

( )   **BY OVERNIGHT DELIVERY** (CCP § 1013(c)): I am readily familiar with the ordinary practice of the business with respect to the collection and processing of correspondence for mailing by Express Mail and other carriers providing for overnight delivery. I placed true and correct copies of the above-titled document(s) in envelopes addressed as above, with first class postage thereon fully prepaid. I sealed the aforesaid envelopes and placed them for collection and mailing by Express Mail or other carrier for overnight delivery in accordance with the ordinary practice of the business. Correspondence so placed is ordinarily deposited by the business with Express Mail or other carrier on the same day.

( )   **BY PERSONAL SERVICE UPON AN ATTORNEY** (CCP § 1011(a)): I placed true and correct copies of the above-titled document(s) in sealed envelopes addressed as indicated above. I delivered each of said envelopes by hand to a receptionist or person having charge of it at the address on the envelope, or, if no person was present, by leaving the envelope in a conspicuous place in the office between the hours of nine in the morning and five in the afternoon.

( )   **BY PERSONAL SERVICE UPON A PARTY** (CCP § 1011(b)): I placed true and correct copies of the above-titled document(s) in sealed envelopes addressed as indicated above. I delivered each of said envelopes by hand to a person of not less than 18 years of age at the address listed on the envelope, between the hours of eight in the morning and six in the evening.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 9, 2007, at San Francisco, California.

_Jean Barretto_
Jean Barretto