1  Robert J. Wolfe, Esq. (State Bar No. 132845)
   ENGSTROM, LIPSCOMB & LACK
2  10100 Santa Monica Boulevard, 12th Floor
   Los Angeles, CA 90067
3  Telephone:  (310-552-3800
   Facsimile:  (310-552-9434)
4
   Alan Nakazawa, Esq. (State Bar No. 84670)
5  Dena Aghabeg, Esq. (State Bar No. 185311)
   COGSWELL NAKAZAWA & CHANG, LLP
6  444 West Ocean Boulevard, Suite 1250
   Long Beach, CA 90802-8131
7  Telephone:  (562) 951-8668
   Facsimile:  (562) 951-3933
8  Attorneys for Plaintiffs
   ALAN CARPENTER AND TRACY RAGSDALE
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN CARPENTER and TRACY RAGSDALE, individuals,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>Tug MICHAEL UHL, her engines, machinery, tackle, equipment, furnishings and appurtenances, *in rem*, and MARITIME LOGISTICS, INC., FRANK LOVING, an individual, and BLAINE HUGHES, an individual *in personam*,<br><br>　　　　　　Defendants. | CASE NO. 07CV0166 DMS POR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 1 TO EXCLUDE ANY OPINIONS, STATEMENTS OR CONCLUSIONS MADE BY THE UNITED STATES COAST GUARD CONCERNING THE SINKING OF THE ALBION PURSUANT TO 46 C.F.R. §4.07-1(a)**<br><br>Date:  April 24, 2009<br>Time:  2:00 p.m.<br>Ctrm:  10 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 24, 2009, at 2:00 p.m., or as soon thereafter as counsel may be heard in the above entitled Court, Plaintiffs, ALAN CARPENTER and TRACY RAGSDALE, ("Plaintiffs") will, and hereby does move, to preclude Defendants from offering into evidence any opinions, statements, conclusions or recommendations made by the United States Coast Guard in relation to the cause of the sinking of the Albion.

This Motion is made pursuant to 46 C.F.R. §4.07-1(a) and *Huber v. United States* (9th Cir. 1988) 838 F.2d 398, 403 which held that the conclusions and recommendations made by the Coast Guard in its investigative report were inadmissible as evidence in a civil action arising out of an accident. This Motion is based upon this Notice, the Memorandum of Points and Authorities and Declaration or Robert J. Wolfe, and Exhibits thereto, and all pleadings and records on file with this Court in this action.

DATED: April 10, 2009

ENGSTROM, LIPSCOMB & LACK

By */s/ ROBERT J. WOLFE*
ROBERT J. WOLFE
ROBERT T. BRYSON
Attorneys for Plaintiffs
ALAN CARPENTER and
TRACY RAGSDALE

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case arises from the January 31, 2005 sinking of the Plaintiffs' vessel, the "Albion", while under tow by Defendants Maritime Logistics, Inc., Captain Frank Loving and the tug vessel "Michael Uhl." As a result of the sinking, the Albion was a total loss and not recoverable. After conducting a cursory investigation into the incident, which did not include interviewing the entire crew of the Michael Uhl, nor Plaintiffs, nor even an inspection of the Albion to determine the cause of the sinking, the United States Coast Guard prepared reports including but not limited to the report of February 2, 2005. [See Ex. "1" attached to Wolfe Declaration.] In addition, Plaintiffs expect that Defendants will attempt to introduce purported statements made by the Coast Guard concerning the manner in which the Defendants towed the Albion.

Despite proffering duplicative and overlapping experts' opinions on the issue of liability and causation, Defendants seek to introduce the United States Coast Guard's reports and or statements concerning its opinions, conclusions and recommendations as evidence of liability and causation. However, pursuant to *Huber v. United States* (9th Cir. 1988) 838 F.2d 398, 403 the conclusions and recommendations contained in a Coast Guard investigative report are inadmissable as evidence in a civil action arising out of an accident. By application, this must extend to oral statements as well. The *Huber* court's decision is predicated upon 46 C.F.R. §4.07-1(b), which prohibits the use of Coast Guard's determinations in its reports for use to "fix civil or criminal responsibility." Accordingly, Plaintiffs respectfully request that the Court rule inadmissable any opinions, conclusions, statements or recommendations made by the Coast Guard concerning the cause, or the conduct of the parties, whether contained in a written report or made orally.

## II. THIS COURT SHOULD EXCLUDE ANY OPINIONS, CONCLUSIONS OR RECOMMENDATIONS MADE BY THE THE COAST GUARD.

46 C.F.R. §4.07-1(b) provides: "[t]he investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting the safety of life and property at sea, and *are not intended to fix civil or criminal responsibility.*"

[Italics added.]

*Huber v. United States* (9th Cir. 1988) 838 F.2d 398 arose of a marine accident involving the sinking of a yacht resulting in the death of two crew members. Plaintiffs brought suit against the shipping company and the United States alleging negligent rescue efforts in executing the rescue. The Coast Guard investigated the accident and issued reports finding the United States solely responsible. The United States appealed from district court decision admitting the Coast Guard reports into evidence.

Relying upon 46 C.F.R. §4.07-1(b) the *Huber* court held that the conclusions and recommendations contained in the Coast Guard investigative report were inadmissible as evidence in a civil action arising out of an accident. *Id.*, at 403. The court reasoned that to admit the reports would contradict 46 C.F.R. §4.07-1(b) by allowing the reports to "fix civil responsibility" and would simultaneously defeat the purpose of subpart (c) which provides that Coast Guard accident reports are to be safety-maximizing tools and not a forensic aid. *Id.*, at 402-403.

The *Huber* holding and rationale is controlling in this case. In this case, the United States Coast Guard, although it investigated the circumstances of the sinking of the Albion, it did not conduct a complete and thorough forensic investigation of the subject incident. The United States Coast Guard issued reports concerning the investigation, which the Defendants now seek to introduce as a complete and definitive cause of the sinking of the Albion. The Coast Guard issued at least one report which contains the Coast Guard's opinions and conclusions. [See Ex. "1" attached to the Wolfe Declaration.] Defendants seek to introduce the Coast Guard's Report for all purposes including offering into evidence any of the Coast Guard's opinions, conclusions or recommendations relative to the sinking of the Albion. However, the *Huber* court held that the opinions, conclusions and recommendations of the Coast Guard Reports are inadmissible as it would contravene the 46 C.F.R. §4.07-1 which prohibits the use of such reports to "fix civil responsibility" or as a forensic aid. Accordingly, Plaintiffs respectfully request that this Court follow *Huber* and rule that any opinions, conclusions or recommendations contained in the Coast Guard reports be excluded from this trial.

1 | The *Huber* rationale would certainly also apply to any oral statements made by the Coast
2 | Guard concerning the Defendants' conduct in connection with the tow. In addition to other
3 | evidentiary reasons for the exclusion of out of court statements, whether a statement is oral or
4 | contained in a written report, any statement made by the Coast Guard should be excluded under
5 | *Huber* if it is offered for the purpose of causation, liability or the appropriateness of the conduct
6 | of the parties.

## III. CONCLUSION

Pursuant to the *Huber* decision and 46 C.F.R. §4.07-1, any opinions, conclusions, statements or recommendations whether contained within the Coast Guard's investigative reports or otherwise are inadmissable. As such, Plaintiffs respectfully request that the Court grant this Motion and exclude any such evidence at time of trial.

DATED: April 10, 2009

ENGSTROM, LIPSCOMB & LACK

By /S/ ROBERT J. WOLFE
ROBERT J. WOLFE
ROBERT T. BRYSON
Attorneys for Plaintiffs
ALAN CARPENTER and
TRACY RAGSDALE

# DECLARATION OF ROBERT J. WOLFE

1. I am an attorney at law duly licensed to practice before all of the courts of the State of California. I am a member of the law firm of Engstrom, Lipscomb & Lack, attorneys of record for Plaintiffs ALAN CARPENTER and TRACEY RAGSDALE in the above-captioned matter. I am conversant with the following facts, and if called upon as a witness in this matter, I could and would competently state the following:

2. Attached hereto as Exhibit "1" is a true and accurate copy of the Coast Guard's February 2, 2005 Report.

3. On or about April 3, 2009, I met and conferred with Defendants' counsel Norman J. Ronneberg Jr., in a good faith attempt to voluntarily resolve the issue addressed in this Motion *in Limine*. Unfortunately, despite Plaintiffs' good faith efforts, the parties were unable to resolve this issue which necessitated Plaintiffs' filing the subject Motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _10_ th day of April, 2009 at Los Angeles, California.

ROBERT J. WOLFE

**EXHIBIT 1**

# REPORT OF MARINE ACCIDENT, INJURY OR DEATH

**DEPARTMENT OF HOMELAND SECURITY**
U.S. COAST GUARD
CG-2692 (Rev. 3-2003)

OMB Control No. 1625-0001
RCS No. G-MOA
MISLE NOTIFICATION NUMBER

## SECTION I. GENERAL INFORMATION

1. Name of Vessel or Facility: **Albion**
2. Official No.: **#298160**
3. Nationality: **USA**
4. Call Sign:
5. USCG Certificate of Inspection issued at: **NO**
6. Type (Towing, Freight, Fish, Drill, etc.): **Motor Yacht**
7. Length: **52 ft**
8. Gross Tons:
9. Year Built: **1965**
10. Propulsion: **Diesel**
11. Hull Material: **Wood**
12. Draft — FWD: **3 ft.**  AFT: **3 1/2 ft**
13. If Vessel Classed, By Whom: **N/A**
14. Date (of occurrence): **Jan. 31st 2005**
15. TIME (Local): **0830 hrs.**
16. Location: **36° 38.397 N x 121° 52.475 W**
17. Estimated Loss of Damage TO:
    VESSEL **$75,000.00**
    CARGO
    OTHER
18. Name, Address & Telephone No. of Operating Co.:

19. Name of Master or Person in Charge: **Blaine Noel Hughes**
    USCG License: **Lic. #946933**  ☒ YES ☐ NO
20. Name of Pilot: **Same**
    USCG License: ☒ YES ☐ NO
    State License: ☐ YES ☐ NO

### 21. Casualty Elements
- NO. OF PERSONS ON BOARD: ___
- ☐ DEATH - HOW MANY?
- ☐ MISSING - HOW MANY?
- ☐ INJURED - HOW MANY?
- ☐ HAZARDOUS MATERIAL RELEASED OR INVOLVED
- ☐ OIL SPILL - ESTIMATE AMOUNT:
- ☐ CARGO CONTAINER LOST/DAMAGED
- ☐ COLLISION
- ☐ GROUNDING  ☐ WAKE DAMAGE
- ☐ FLOODING; SWAMPING WITHOUT SINKING
- ☐ CAPSIZING
- ☒ FOUNDERING OR SINKING
- ☐ HEAVY WEATHER DAMAGE
- ☐ FIRE
- ☐ EXPLOSION
- ☐ COMMERCIAL DIVING CASUALTY
- ☐ ICE DAMAGE
- ☐ DAMAGE TO AIDS TO NAVIGATION
- ☐ STEERING FAILURE
- ☐ MACHINERY OR EQUIPMENT FAILURE
- ☐ ELECTRICAL FAILURE
- ☐ STRUCTURAL FAILURE
- ☐ FIREFIGHTING OR EMERGENCY EQUIPMENT FAILED OR INADEQUATE
- ☐ LIFESAVING EQUIPMENT FAILED OR INADEQUATE
- ☐ BLOW OUT
- ☐ ALCOHOL INVOLVEMENT
- ☐ DRUG INVOLVEMENT
- ☐ OTHER (Specify)

### 22. Conditions
- A. Sea or River Conditions:
- B. WEATHER: ☒ CLEAR ☐ RAIN ☐ SNOW ☐ FOG ☐ OTHER
- C. TIME: ☒ DAYLIGHT ☐ TWILIGHT ☒ NIGHT
- D. VISIBILITY: ☒ GOOD ☐ FAIR ☐ POOR
- E. DISTANCE (miles) of visibility: **8-10 mi**
- F. AIR TEMPERATURE (F): **65°**
- G. WIND SPEED & DIRECTION: **Variable to 15 kts**
- H. CURRENT SPEED & DIRECTION: **1 1/2 kts South**

### 23. Navigation Information
- ☐ MOORED, DOCKED OR FIXED
- ☐ ANCHORED  ☒ UNDERWAY OR DRIFTING
- SPEED AND COURSE: **2 kts / 90°**
24. Last Port: **Morro Bay, CA**  Where Bound: **Reedsport Or.**
24a. Time and Date of Departure: **0700 hrs 1/30/05**

### 25. FOR TOWING ONLY
- 25a. NUMBER OF VESSELS TOWED — Empty: ___ Loaded: ___ Total: **1**
- 25b. TOTAL H.P. OF TOWING UNITS: **850 hp**
- 25c. MAXIMUM SIZE OF TOW WITH TOW-BOAT(S) — Length: **1500 ft.** Width: **30 ft**
- 25d.: ☐ PUSHING AHEAD ☒ TOWING ASTERN ☐ TOWING ALONGSIDE ☐ MORE THAN ONE TOW-BOAT ON TOW

## SECTION II. BARGE INFORMATION
26. Name:
26a. Official Number:
26b. Type:
26c. Length:
26d. Gross Tons:
26e. USCG Certificate of Inspection Issued at:
26f. Year Built:
26g. ☐ SINGLE SKIN ☐ DOUBLE
26h. Draft FWD / AFT:
26i. Operating Company:
26j. Damage Amount — BARGE / CARGO / OTHER:
26k. Describe Damage to Barge:

PREVIOUS EDITION IS OBSOLETE

EXHIBIT ___1___

ALLSTATE 00211

## SECTION III. PERSONNEL ACCIDENT INFORMATION

| 27. Person Involved | 27a. Name (Last, First, Middle Name) | 27c. Status |
|---|---|---|
| ☒ MALE or ☐ FEMALE <br> ☐ DEAD ☐ INJURED <br> ☐ MISSING | <br> 27b. Address (City, State, Zip Code) | ☐ Crew <br> ☐ Passenger <br> ☐ Other |

| 28. Birth Date | 29. Telephone No. | 30. Job Position | 31. (Check here if off duty) ☐ |
|---|---|---|---|

32. Employer - (if different from Block 18., fill in Name, Address, Telephone No.)

| 33. Person's Time | YEAR(S) | MONTH(S) | 34. Industry of Employer (Towing, Fishing, Shipping, Crew Supply, Drilling, etc.) |
|---|---|---|---|
| A. IN THIS INDUSTRY - | | | |
| B. WITH THIS COMPANY - | | | 35. Was the Injured Person Incapacitated 72 Hours or More? |
| C. IN PRESENT JOB OR POSITION - | | | |
| D. ON PRESENT VESSEL/FACILITY - | | | 36. Date of Death |
| E. HOURS ON DUTY WHEN ACCIDENT OCCURRED - | | | |

37. Activity of Person at Time of Accident

38. Specific Location of Accident on Vessel/Facility

| 39. Type of Accident (Fall, Caught between, etc.) | 40. Resulting Injury (Cut, Bruise, Fracture, Burn, etc.) |
|---|---|

| 41. Part of Body Injured | 42. Equipment Involved in Accident |
|---|---|

43. Specific Object, Part of the Equipment in block 42., or Substance (Chemical, Solvent, etc.) that directly produced the Injury.

## SECTION IV. DESCRIPTION OF CASUALTY

44. Describe how accident occured, damage, information on alcohol/drug involvement and recommendations for corrective safety measures. (See instructions and attach additional sheets if necessary).

See Attachment

45. Witness (Name, Address, Telephone No.)

46. Witness (Name, Address, Telephone No.)

## SECTION V. PERSON MAKING THIS REPORT

| 47. Name (PRINT) (Last, First, Middle) | 47b. Address (City, State, Zip Code) | 47c. Title |
|---|---|---|
| HUGHES, Blaine, Noel | | Captain |
| 47a. Signature <br> Blaine Noel Hugh | | 47d. Telephone No. <br> 47e. Date 2/2/05 |

| FOR COAST GUARD USE ONLY | REPORTING OFFICE: |
|---|---|
| MISLE Incident Investigation Activity Data Entry: | MISLE Incident Investigation Activity Number (if applicable) |
| ☐ NONE ☐ PRELIMINARY ☐ DATA COLLECTION ☐ INFORMAL ☐ FORMAL | |

| Serious Marine Incident ☐ Yes ☐ No <br> Major Marine Casualty ☐ Yes ☐ No | INVESTIGATOR (Name) | DATE | APPROVED BY (Name) | DATE |
|---|---|---|---|---|

ALLSTATE 00212

Statement of: Blaine Noel Hughes                    Febuary 2, 2005

    The vessel Albion, a 52ft. Wooden motor yacht, was being towed astern of the m/v Michael Uhl. Departing Morro Bay on Sunday 1/30/05 at 0700hrs. For the navigation and delivery to Reedsport, Oregon. Due to arrive Wednesday 2/02/05 at 1200hrs-High Tide. Fair weather prevailed and was forecasted to continue fair for this navigation. Albion's distance astern was adjusted to be "in step" with the Micheal Uhl, Approx. 1350ft between vessels. The towed yacht displayed no negative characteristic while on the hawser. (ie: favoring one side, unresponsive to course changes, fresh wind influences, etc.) The bridal, shock line, and chain forming our "make up", proved to be adequate for centenary and control of tow. Battery operated navigation lights were affixed properly and illuminated manually upon our departure from Morro Bay. The tow wire had been inspected every hour and chafing gear affixed at stern roller. The Albion towed straight and responded readily to course changes as needed. The tow was under control and easily controlled. This was the case up to approx.2000hrs. The towed vessel began to yaw and track to the limits of the wire's scope. Speed was reduced from 5.5 kts to bare steerage. The tow was illuminated by search light and aft deck floods. The Albion was down by the bow and carrying little freeboard to the cabin door. We then "shortened up" and took the chain onto the drum along with 7 wraps of shock line, leaving 150' of 2 1/2" Sampson braid spilled, drum to bridal. Albion had already started to settle astern, deck awash showing little freeboard from bulwarks forward to amidships. Although completely awash vessel did not loose buoyancy. While vessel was fitted with an emergency generator and trash pump for this tow. The area they occupied was flooded and inaccessible. Putting personnel aboard to intervene appeard to be a useless and dangerous scenario. The Michael Uhl was in no danger of being pulled under and cutting loose a partially submerged wooden vessel presented a Hazard to Navigation. Although several cutting tools were staged at the ready if the situation deteriated further. An apparent stabilization in vessel's condition of coming to wash and sinking no further was evident. Coast Guard Monterey Group was contacted and informed of the situation, via VHF Radio and cel phone. After a cooperative exchange of information and ideas, we reached an understanding for the safest possible course of action. It was agreed to make for the nearest port of refuge, or safe harbor, where additional assets were available and standing by to assist upon our arrival. Monterey Harbor, at 24 miles, was definitely the closest, and offered facilities capable of dealing with the stricken vessel. At 2100hrs we changed course and started making way for Monterey harbor at 2kts. ETA of 1000hrs at the sea-buoy the following day-1/31/05 was relayed to the Coast Guard Station, and a "check-in" communication scheduled every 2 hours until arrival. The towed vessel's condition remained unchanged for the next 11hrs & 30min. At approx. 0830hrs on 1/31/05, well inside Monterey Bay with our destination insight. A set of three larger & closer together swells approached from directly astern. The swells caused the towline to be slackened and fetched up tight with each passing. The third, and largest swell having the greatest effect with both intensity and duration. The towline slackened, as the swell

ALLSTATE 00213

pushed through, swamping and sinking Albion completely. Continued to make some headway with submerged tow, heading south east @.2kts traveling .175nm. until vessel settled on bottom at 1000hrs.

In Position:36' 38.397N x 121' 52.475W  in 172 ft of water.
          According to ship's GPS and Fathometer.

                                              Blaine Noel Hughes
                                         Master; m/v "Michael Uhl"

ALLSTATE 00214

Statement of: Frank Loving                                      January 31, 2005

After meeting with Alan Carpenter and inspecting his vessel Albion we came to an agreement to have Maritime Logistics tow the vessel form San Diego California to Reedsport Oregon. This could be done at any given time making the best opportunity to use good weather along the way. Over the course of the next month and a half Mr. Carpenter made safety improvements to the vessel to make her ready for sea (i.e.: sealing port lights and through hulls removing loose equipment and securing others ect.) After sea trailing the Albion and inspecting the vessel we agreed to get underway January 21 2005 about 2200 hrs. Confirming with Pacific Weather Analysis that a window of good weather was ahead we prepared to get underway. With the Albion in tow we left San Diego harbor near 2300 hrs. Jan. 21, 2005. Once at sea we let the tow out to about 1000' to 1200' setting the tow to stay in step with the Michael Uhl. After watching tow for some time and inspecting the tow cable no negative characteristic were noted, the tow followed straight behind the towing vessel and responded to course changes readily. Inspection of tow, and gear were made at steady intervals.

Watching the weather reports it appeared that weather north of San Francisco was changing and after conferring with Pacific Weather Analysis to confirm this, it was thought best to go into Morro Bay and let the front pass. After arriving in Morro Bay at approx, 1800 on Jan 23, the Albion was secured and after inspecting the vessel it was found to be in the same shape as when it left San Diego. Very little water was in the bilge, no through hull were taking any water, all port lights were secure and batteries appeared to have a good charge.

We stayed in Morro Bay till Jan. 30 2005 during which time we inspected the tow daily, started the mains to ensure a good charge would stay in the batteries and that the vessel was staying dry and sound. This delay also allowed time to drive to Reedsport and confer with local USCG station on harbor entrance and where to put tow when it arrives. When after conferring with Pacific weather Analysis good weather would prevail for the next six to ten days we made ready for sea.

0600hrs Jan. 30 All crew on vessel making ready for tow, bilge pumps were inspected and working all bilges were dry or near, new batteries installed in towing lights, windows, port lights, doors in good shape and secured. Tow bridle and safety lines secure and in place. 0715hrs vessel underway.

2100 Approx:
Call on land line from Michael Uhl. For no apparent reason tow appears to have taken on water. Contact with USCG Monterey had been made and decision to go into Monterey harbor to haul tow was thought best. After talking with the vessel I contacted CG Monterey and the Monterey harbor master to confirm that bringing our tow into the boat yard was the best course of action, and at this time it all seamed good. After this I contacted the tow owner and his insurance company to keep them informed. I left it with the vessel that if anything changed to call me ASAP and that I was underway to

ALLSTATE 00215

Monterey. 0700hrs after conversations with the owner I am informed that Vessel Assist will be coming out to help dewater the tow and bring into the boat yard. 0830hrs tow has gone down and Vessel Assist / Pacific Salvage Inc. will be taking over to try and bring the tow back to the surface and into the boat yard.

During the next hours contact with USCG, Monterey harbor Master, Noaa, the Owner and all insurance companies was made and continued through recovery will be made.

ALLSTATE 00216

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the

**PLAINTIFFS' NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 1 TO EXCLUDE ANY OPINIONS, STATEMENTS OR CONCLUSIONS MADE BY THE UNITED STATES COAST GUARD CONCERNING THE SINKING OF THE ALBION PURSUANT TO 46 C.F.R. §4.07-1(a)**

was served via Notice of Electronic Filing under the court's CM/ECF system this 10th day of April, 2009 to the following counsel of record:

| Attorney | Phone | Party |
|---|---|---|
| Alan Nakazawa, Esq.<br>Dena Aghabeg, Esq.<br>**Cogswell Nakazawa & Chang, LLP**<br>444 West Ocean Boulevard, Suite 1250<br>Long Beach, CA 90802-8131 | PH: 562-951-8668<br>FX: 562-951-3933<br>alan.nakazawa@cnc-law.com | Co-Counsel for Plaintiffs **Alan Carpenter and Tracy Ragsdale** |
| Marilyn Raia, Esq.<br>Norman J. Ronneberg, Jr., Esq.<br>**Bullivant Houser Bailey PC**<br>601 California Street, Suite 1800<br>San Francisco, CA 94108-2823 | PH: 415-352-2700<br>FX: 415-352-2701<br>**Raia:**<br>PH: 415-352-2721<br>marilyn.raia@bullivant.com<br>**Ronneberg:**<br>PH: 415-352-2728<br>norman.ronneberg@bullivant.com | Attorneys for Defendants **Maritime Logistics Inc., Frank Loving and Blaine Hughes** |

/S/ ROBERT J. WOLFE

ROBERT J. WOLFE