Marilyn Raia, SBN 072320
E-Mail: marilyn.raia@bullivant.com
Norman J. Ronneberg, Jr., SBN 68233
E-Mail: norman.ronneberg@bullivant.com
Bullivant Houser Bailey PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone: 415.352.2700
Facsimile: 415.352.2701

Attorneys for Tug Michael Uhl, Her Engines,
Machinery, Tackle, Equipment, Furnishings
and Appurtenances, in Rem, and Maritime
Logistics, Inc., Frank Loving, an Individual
and Blaine Hughes, an Individual in Personam

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN CARPENTER AND TRACY RAGSDALE, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>Tug MICHAEL UHL, her engines, machinery, tackle, equipment, furnishings and appurtenances, in rem, and MARITIME LOGISTICS, INC., FRANK LOVING, an individual and BLAINE HUGHES, an individual in personam,<br><br>Defendants. | Case No.: 07 CV 0166<br><br>**MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART**<br><br>Trial Date: April 27, 2009<br>Time: 9:00 AM<br>Judge: Hon. Dana Sabraw |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND FACTS AND LAW ............................................................... 1

    A. Overwhelming maritime case authority requires the owner of a towed vessel to make sure his vessel is seaworthy before the tow begins. Failure to do so is negligence. ................................................................................................. 1

    B. Judicial precedent defines the proper standard of conduct for a "reasonable" owner of a towed vessel ............................................................................... 3

    C. Maritime Logistics did not have a duty to make the ALBION seaworthy or to install equipment on her to insure her seaworthiness. .................................. 4

    D. Maritime Logistics was entitled to assume the ALBION was tendered in a seaworthy condition and could further rely on plaintiffs' representations regarding the ALBION's good condition. ..................................................... 5

    E. Because of Plaintiffs' duty to tender a seaworthy vessel, Maritime Logistics had no obligation to do more than a cursory inspection of the ALBION. ....... 5

    F. Maritime Logistics had no duty to constantly monitor the ALBION. ........... 6

    G. Robert Stewart's expected testimony is inconsistent with well-established maritime law. .................................................................................................. 6

    H. Under Daubert principles, this court should exclude Capt. Stewart's testimony because inter alia, it contradicts applicable law. ....................... 11

        1. In admiralty, the trial judge is the "gatekeeper" of expert testimony............ 11

        2. The purpose and admissibility of expert testimony. .................................. 12

        3. Legally unsupportable expert opinions cannot support the trier of fact's decision. ................................................................................................ 13

        4. Expert Stewart's expected testimony will be of no value to the Court and should be excluded. .............................................................................. 14

III. CONCLUSION ............................................................................................... 15

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

# TABLE OF AUTHORITIES

**CASES** Page(s)

*A.S. Wikstrom, Inc. v. THE TUG JULIA C. MORAN,*
190 F. Supp. 250 (S.D.N.Y. 1960) ........................................................................ 6

*American Dredging Co. v. Miller*
510 U.S. 443 (1994) ........................................................................................... 1

*American Home Assurance v. L & L Marine, Inc.,*
688 F. Supp. 502 (E.D. Mo. 1988), *aff'd in pertinent part,* 875 F.2d 1351 (8th Cir.
1989)..................................................................................................................... 4

*Arkansas State Highway Comm'n v. Arkansas River Co.,*
271 F.3d 753 (8th Cir. 2001)........................................................................... 2, 4

*Associated Dredging Co. v. Continental Marine Towing Co.,*
617 F. Supp. 961 (E.D. La. 1985) ...................................................................... 2

*Atmel Corp. v. Information Storage Devices, Inc.,*
189 F.R.D. 410 (N.D. Cal. 1999) ..................................................................... 13

*Cargill, Inc. v. C & P Towing Co.,*
1991 AMC 101 (E.D. Va. 1990), *aff'd,* 1992 AMC 392 (4th Cir. 1992)...................... 1, 2, 3, 5

*Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.,*
2005 AMC 2307 (D. Ark. 2005) ...................................................................... 11

*Complaint of Steuart Transp. Co.,* 435 F. Supp. 798, 804 (E.D. Va.1977), *aff'd,* 596 F.2d
609 (4th Cir. 1979)................................................................................................ 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579, 113 S. Ct. 2786......................................................................... 11, 12

*Dow Chemical Co. v. M/V GULF SEAS,*
428 F. Supp. 667 (W.D. La. 1977) ..................................................................... 5

*Eckert v. United States,*
232 F. Supp. 2d 1312 (S.D. Fla. 2002).............................................................. 4

*Frederick Snare Corp. v. Moran Towing & Transp. Co.,*
195 F. Supp. 639 (S.D.N.Y. 1961) .................................................................... 3

*Hart v. Blakemore,*
410 F.2d 218 (5th Cir. 1969)............................................................................. 3

*Hunley v. Ace Maritime Corp.,*
927 F.2d 493 (1991) ........................................................................................... 1

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

*In re Christiansen Marine, Inc.*,
 1966 AMC 2353 (E.D. Va. 1996) .................................................................. 3, 4, 5

*In re Tug Beverly, Inc.*,
 1994 AMC 2437 (E.D. Pa. 1994) ........................................................................... 1

*Kenny Marine Towing, Inc. v. M/V JOHN R. RICE*,
 583 F. Supp. 1196 (E.D. La. 1984) .................................................................. 3, 5

*Kossick v. United Fruit Co.*,
 365 U.S. 731 (1961) ............................................................................................. 2

*Kumho Tire Co., Ltd. v. Carmichael*,
 526 U.S. 137 (1999) ............................................................................. 11, 12, 13

*Lucent Technologies v. Gateway Inc.*,
 509 F. Supp. 2d 912 (S.D. Cal. 2007) ............................................................... 13

*Lust v. Merrrell Dow Pharmaceuticals, Inc.*
 89 F.3d 594 (9th Cir. 1996) ............................................................................... 12

*Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*,
 959 F.2d 49 (5th Cir. 1992) .................................................................................. 4

*Marina Mgmt. Group, Inc. v. Basic Towing, Inc.*,
 2003 U.S. App. LEXIS 10863 (6th Cir. 2003) ..................................................... 5

*Massman Constr. Co. v. Sioux City & New Orleans Barge Lines*,
 462 F. Supp. 1362 (W.D. Mo. 1979) ........................................................... 3, 6, 12

*May v. Hamburg-Amerikanische Packetfahrt Aktiengesellschaft*,
 290 U.S. 333, 350 (1933) ..................................................................................... 1

*McDermott Inc. v. AmClyde*,
 1997 AMC 692 (E.D. La. 1996) .................................................................... 2, 3, 4

*McDermott Int'l v. Wilander*,
 498 U.S. 337 (1991) ............................................................................................. 2

*McMellon v. United States*,
 395 F. Supp. 2d 423 (S.D. W. Va. 2005) ............................................................. 4

*Nat G. Harrison Overseas Corp. v. American Tug Titan*,
 516 F.2d 89 (5th Cir. 1975), modified ................................................................. 5

*Romero v. Int'l Terminal Operating Co.*,
 358 U.S. 354 (1959) ............................................................................................. 1

*South, Inc. v. Moran Towing & Transp. Co.*,
 360 F.2d 1002 (2d Cir. 1966) ........................................................................... 2, 6

*Southgate v. Eastern Transp. Co.*,
    21 F.2d 47 (4th Cir. 1927) ........................................................................ 3

*Star Towing Co. v. Barge ORG-6504*,
    301 F. Supp. 819 (E.D. La. 1969) ........................................................... 5

*Stevens v. THE WHITE CITY*,
    285 U.S. 195 (1932) ................................................................................ 10

*Stewart v. Dutra Constr. Co.*,
    543 U.S. 481 (2005) .................................................................................. 2

*The EDMUND L. LEVY*, 128 F. 683, 684 (2d Cir. 1904) ............................... 2

*The T.J. HOOPER*, 60 F.2d 737 (2d Cir. 1932) ............................................. 4

*Theriot v. Dawson Production Services, Inc.*,
    1998 U.S. Dist. LEXIS 14932 (E.D. La. 1998) ....................................... 5

*Torres v. M/V FUICINO FISHING VESSEL*,
    141 F. Supp. 2d 1028 (S.D. Cal. 2001) .................................................... 1

*Trans-Tec Asia v. M/V HARMONY*,
    518 F.3d 1120 (9th Cir. 2008) .................................................................. 1

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (1998) .............................................................................. 13

*U.S. v. Hermanek*,
    289 F.3d 1076 (9th Cir. 2002) .......................................................... 12, 13

*Vanderpool v. Ritchey L. Edmondson*,
    2005 U.S. Dist. LEXIS 8611 (E.D. Tenn. 2004) ................................... 14

*Wallis v. Princess Cruises, Inc.*,
    306 F.3d 827 (9th Cir. 2002) .................................................................... 1

**OTHER AUTHORITIES**

Fed. Rule of Evidence 702 ................................................................. 1, 11, 12

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

## I. **INTRODUCTION**

Defendants move *in limine* to exclude the testimony of plaintiffs' expert witness Robert Stewart under Fed. Rule of Evidence 702, on the ground his expected testimony is legally unsupportable because it contradicts the applicable law. Accordingly, it will not meet the criteria for expert testimony and will not be of any assistance to the court.

Robert Stewart is expected to testify about whether defendants met the proper standard of care when towing plaintiffs' vessel ALBION. At deposition, Robert Stewart testified about what he believed the standard of care is. He testified that: 1) Defendants were obliged to make sure the ALBION was seaworthy; 2) Defendants were required to install safety equipment on the ALBION; 3) Defendants were further required to do a comprehensive inspection/survey of the ALBION before the tow began; and 4) Defendants were negligent for failing to maintain a "24/7" lookout on the vessel. Each of these negligence contentions was not only factually erroneous, but also directly contrary to long-settled standards of care set by admiralty courts in published opinons. Thus, Capt. Stewart's "expert" opinions as to the proper standard of care on these subjects are of no value whatsoever to this court and his testimony must be excluded.

## II. **BACKGROUND FACTS AND LAW**

**A.    Overwhelming maritime case authority requires the owner of a towed vessel to make sure his vessel is seaworthy before the tow begins. Failure to do so is negligence.**

For more than 100 years, admiralty courts have agreed it is the owner of the towed vessel (not the tugboat operator) who is obliged to make sure his vessel is seaworthy and physically capable of carrying out the anticipated voyage. This is an "absolute duty." *Cargill, Inc. v. C & P Towing Co.*, 1991 AMC 101, 108 (E.D. Va. 1990), *aff'd*, 1992 AMC 392 (4th Cir. 1992).[1] It is also non-delegable. *In re Tug Beverly, Inc.*, 1994 AMC 2437, 2440 (E.D. Pa.

---

[1] "AMC" (American Maritime Cases) is a compilation of most of the federal and state maritime law opinions in the United States and Canada. Cases reported only in AMC are regularly cited to by **all** courts sitting in admiralty. See e.g., *American Dredging Co. v. Miller* 510 U.S. 443, 468-469 (1994); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354(1959); *May v. Hamburg-Amerikanische Packetfahrt Aktiengesellschaft*, 290 U.S. 333,350 (1933); *Trans-Tec Asia v. M/V HARMONY*, 518 F.3d 1120, 1130 (9th Cir. 2008); *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 839 (9th Cir. 2002); *Hunley v. Ace Maritime Corp.*, 927 F.2d 493, 496 (1991); and *Torres v. M/V FUICINO FISHING VESSEL*, 141 F. Supp. 2d 1028, 1031 (S.D. Cal. 2001). The Southern District of California Court Library has a complete set of American Maritime Cases available for reference.

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

1   1994). The towed vessel owner's failure to do so is negligence. 8 Benedict [2](7th Ed. Rev.),

2   Towage, sec. 14.06[1]:

3           A party offering a vessel for towing warrants its seaworthiness.
          As such, it represents the vessel as being sufficiently tight and

4           strong to weather the ordinary perils of the contemplated voyage.
          The implied warranty reflects the law's conclusion that the tow

5           owner generally is the party best able to know the tow's condition
          and limitations and what must be done to prepare it for the

6           voyage.

7   See *Arkansas State Highway Comm'n v. Arkansas River Co.*, 271 F.3d 753, 758 (8th Cir.

8   2001)[a vessel owner tendering a vessel for towage to a towing company warrants the

9   seaworthiness of that vessel]; *South, Inc. v. Moran Towing & Transp. Co.*, 360 F.2d 1002, 1005

10   (2d Cir. 1966)[It is "settled that the owner of a tow is responsible for its seaworthiness and

11   warrants that she is sufficiently staunch and strong to withstand the ordinary perils to be

12   encountered on the voyage."]; and *The EDMUND L. LEVY*, 128 F. 683, 684 (2d Cir. 1904);

13   *McDermott*, 1997 AMC at 701 ["The owner of the tow must provide a vessel to be towed which

14   is structurally sound in all respects"].

15     In *Associated Dredging Co. v. Continental Marine Towing Co.*, 617 F. Supp. 961, 965

16   (E.D. La. 1985), the court summarized governing maritime law:

17           "In a contract of towage, the owner of the barge warrants that the
          vessel offered for towage is sufficiently staunch and strong to

18           withstand the ordinary perils to be encountered on the voyage...If
          the tow is unseaworthy by reason of weakness, decay, or leaks and

19           such defects are not obvious to the master of the tug, the tug will
          be absolved from responsibility for such unseaworthiness if it is

20           the cause of the damage complained of. This principle is
          commonly referred to as the warranty of seaworthiness."

21

22     The court in *Cargill* explained the logic of the rule:

23           The absolute duty to provide a seaworthy tow is based upon the
          fact that the "tug does not have exclusive control over the tow but

24           only so far as is necessary to enable the tug and those in charge of
          her to fulfill the engagement...The owner of a tow has exclusive

25           control over the condition of its vessel; additionally, the owner of

---

26   [2] Benedict has been recognized by the US Supreme Court as the "leading admiralty treatise,"

27   *McDermott Int'l v. Wilander*, 498 U.S. 337, 344 (1991) and is often cited as authoritive by the
Supreme Court. See e.g., *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 489-90 (2005) and

28   *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961).

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

1  a tow is in the best position to know of the tow's defects and to
2  inform the tug of those defects. In fact, the owner of a tow has "an
   affirmative duty to advise the tug of any conditions which might
3  affect the safety of the towing movement....[citations and interior
   quotes omitted]

4  *Cargill*, 1991 AMC at 108.

5  See also, *Hart v. Blakemore*, 410 F.2d 218, 221-222 (5th Cir. 1969); *Southgate v.*

6  *Eastern Transp. Co.*, 21 F.2d 47, 49 (4th Cir. 1927); *Kenny Marine Towing, Inc. v. M/V JOHN*

7  *R. RICE*, 583 F. Supp. 1196, 1198 (E.D. La. 1984); *Massman Constr. Co. v. Sioux City & New*

8  *Orleans Barge Lines*, 462 F. Supp. 1362, 1368 (W.D. Mo. 1979); *Frederick Snare Corp. v.*

9  *Moran Towing & Transp. Co.*, 195 F. Supp. 639, 642 (S.D.N.Y. 1961).

10  Most emphatically, "It is not the duty of the tug to make the tow and her cargo

11  seaworthy, it is the direct duty of the owner of the tow." *McDermott Inc. v. AmClyde*, 1997

12  AMC 692, 701 (E.D. La. 1996) The warranty of seaworthiness exists for the benefit of the

13  tower. Benedict, supra, at sec. 14.04[2]. Given these authorities, Capt. Stewart's opinion

14  defendants were obliged to make the ALBION seaworthy is clearly erroneous, and his

15  testimony may not be allowed.

16  **B.    Judicial precedent defines the proper standard of conduct for a "reasonable"**
         **owner of a towed vessel**
17
18     Although common law tort principles govern ordinary maritime actions, in the "tug-tow

   situation, the case law provides more specific direction as to the meaning of negligence...."
19
   *Christiansen Marine*, 1996 AMC at 2363 (emphasis added).
20
21     It is axiomatic settled case precedent establishes the proper standard of care or standard

22  of conduct in a negligence action. See Restatement 2nd of Torts, sec. 285 ("How Standard of

23  Conduct is Determined"), which provides that: "The standard of conduct of a reasonable man

   may be (a) established by a legislative enactment or administrative regulation which so
24
   provides, or (c) established by judicial decision" [emphasis added]. See also Comment e to the
25
26  aforesaid Restatement:

27             "To the extent that the decision declares particular conduct to be
               up to or below the socially required standard, it defines the
28             conduct of the reasonable man and narrows the field in which the
               opinion of the trial judge or jury is operative.........."

– 3 –

Maritime courts frequently look to the Restatement of Torts rule, when determining applicable tort standards. See, for example, *Christiansen Marine,* 1996 AMC at 2363 [case law delineates meaning of negligence in tug-tow context]; *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.,* 959 F.2d 49 (5th Cir. 1992); *McMellon v. United States,* 395 F. Supp. 2d 423 (S.D. W. Va. 2005); *Eckert v. United States,* 232 F. Supp. 2d 1312, 1320 (S.D. Fla. 2002)[standard of care arises from judicial decisions].

**C.**   **Maritime Logistics did not have a duty to make the ALBION seaworthy or to install equipment on her to insure her seaworthiness**

Plaintiffs apparently do not challenge the navigation of the Tug MICHAEL UHL, or the way the ALBION's towing equipment was configured or installed. Instead, they argue Maritime Logistics was obligated to perform certain duties, which by law are their own responsibility. For example, plaintiffs contend defendants were somehow required to purchase and install alarms or strobe lights on the ALBION, as part of their towing responsibilities. They (and Capt. Stewart) are wrong. Their theory turns the well-established law of seaworthiness on its head. As the Court explained in *McDermott*: "It is not the duty of the tug to make the tow and her cargo seaworthy, it is the direct duty of the owner of the tow." 1997 AMC at 701. The duty to provide proper equipment for the vessel, or navigational aids rests solely on the tow owner, and the warranty of seaworthiness exists for the benefit of the tower. Benedict, *supra*, at 14.04[2]. See also the Eighth Circuit's recitation of a tow owner's duties in *Arkansas State Highway Comm'n v. Arkansas River Co.,* 271 F.3d 753, 760 (8th Cir. 2001)[The tow owner must not only tender a structurally sound vessel, but must also prepare the vessel's equipment and appurtenances "in such a way that the tug operator will be able to successfully negotiate the conditions and obstacles that the tow will encounter."]; Judge Learned Hand's opinion in *The T.J. HOOPER,* 60 F.2d 737 (2d Cir. 1932), in which he explained it was the tow owner's responsibility to provide his vessel with working pumps, and his failure to do so made his vessel unseaworthy; and *American Home Assurance v. L & L Marine, Inc.,* 688 F. Supp. 502 (E.D. Mo. 1988), *aff'd in pertinent part,* 875 F.2d 1351 (8th Cir. 1989)[tow's obligation to provide properly working winches and shipboard equipment].

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

**D. Maritime Logistics was entitled to assume the ALBION was tendered in a seaworthy condition and could further rely on plaintiffs' representations regarding the ALBION's good condition.**

"Because a tug does not serve to insure its tow or to act as bailee of its tow, it is entitled to rely on the presumption that the tow is seaworthy." *Cargill*, 1991 AMC at 107. See also, *Kenny Marine*, 583 F. Supp. at 1198. This presumption is rendered almost unassailable when the tow's owner makes representations about the seaworthiness or good condition of his vessel. See *Marina Mgmt. Group, Inc. v. Basic Towing, Inc.*, 2003 U.S. App. LEXIS 10863 (6th Cir. 2003)[A tow owner's assurances of a vessel's seaworthiness in response to specific inquiries by the tug eliminate the need for a detailed in-depth inspection.]; *Star Towing Co. v. Barge ORG-6504*, 301 F. Supp. 819 (E.D. La. 1969)["Indeed, the tug master is entitled to rely upon the owner's warranty of seaworthiness unless it is apparent to him that the vessel is unseaworthy…."].

**E. Because of Plaintiffs' duty to tender a seaworthy vessel, Maritime Logistics had no obligation to do more than a cursory inspection of the ALBION.**

A tugboat operator has no duty to: 1) make a detailed inspection of an apparently seaworthy tow, *Nat G. Harrison Overseas Corp. v. American Tug Titan*, 516 F.2d 89, 94 (5th Cir. 1975), modified in part for other reasons at 520 F.2d 1104 (5th Cir. 1975); or 2) give the towed vessel more than a "cursory" inspection before undertaking the voyage. *Cargill*, 1991 AMC at 108. See also, *In re Christiansen Marine, Inc.*, 1966 AMC 2353, 2363-2364 (E.D. Va. 1996)[tug's only duty is to "perform a cursory inspection of her tow."].

A detailed inspection of an apparently seaworthy tow is not required. *Dow Chemical Co. v. M/V GULF SEAS*, 428 F. Supp. 667, 671 (W.D. La. 1977). A short "walk around inspection" by the tugboat operator is all that is legally required. *Christiansen Marine*, 1966 AMC at 2360. See also, *Theriot v. Dawson Production Services, Inc.*, 1998 U.S. Dist. LEXIS 14932 (E.D. La. 1998)[A tug operator has no duty to "painstakingly search out potential hazards" on its tow]; *Complaint of Steuart Transp. Co.*, 435 F. Supp. 798, 804 (E.D. Va.1977), *aff'd*, 596 F.2d 609 (4th Cir. 1979)[It would not be "reasonable for the captain to inspect the barge in every detail for seaworthiness. He is entitled to rely on the expectation that he has been furnished a sound vessel…."].

Capt. Stewart opined defendants were obliged to perform a comprehensive and thorough inspection of the ALBION before accepting it for tow, and a second inspection several days later. The above authorities conclusively establish his unfitness to testify on this subject because he is wrong as a matter of law.

**F.    Maritime Logistics had no duty to constantly monitor the ALBION.**

Plaintiffs' experts opine – once again, incorrectly – the tugboat's crew was required to keep watch on the ALBION non-stop. Capt. Stewart declared the crew should have monitored the tow "24/7", never letting it out of their sight.[3] This is not the law, however. When, as here, the weather was fair and the seas were calm, the tug must only "maintain some reasonably close observation of its tow; the law does not require constant surveillance absent some reason to anticipate disaster." 8 Benedict on Admiralty (7th ed. Rev.) sec. 14.05[5]. See also, *Massman Const.*, 462 F. Supp. at 1368 [Tug has no duty to post a lookout, or maintain constant surveillance of tow]; *Moran Transp.*, 1965 AMC at 2567, *aff'd*, 360 F.2d at 1005; *A.S. Wikstrom, Inc. v. THE TUG JULIA C. MORAN*, 190 F. Supp. 250, 252 (S.D.N.Y. 1960)["In the absence of any reason to expect a perilous condition to develop, constant surveillance of the tow is not mandated."]

**G.    Robert Stewart's expected testimony is inconsistent with well-established maritime law.**

Plaintiffs' expert Stewart admits his ignorance of maritime law with respect to towing:

> Q: Now, have you ever done any studying about the law of towing? Are you conversant in the law of towing?
>
> A: Beyond Lloyds or day rates---
>
> Q: Maritime law, cases, statutes?
>
> A:-- I mean conversant, yes.
>
> Q: So are you conversant in knowing the obligations of each of the parties in the towing contract, the towed vessel and the towing vessel?
>
> A: In a particular contract or just generally?

---

[3] See Stewart deposition, p. 74:10-12; Capt. Stewart admitted, however, he was unaware of any book, publication or law that requires this type of constant monitoring of a tow by a tug. [Dep of Robert Stewart, p 73:25 to p. 74:1-13.]

> Q: Generally, speaking maritime law, what the obligations of the parties to the towing contracts are as a matter of law, anything like that?
>
> Mr. Wolfe: Objection. Calls for a legal conclusion.
>
> A: Yeah. Not as a matter of law, no. I can't say that I am. …

[Deposition of Robert Stewart, pp. 28:25 – 29:15.]

Therefore, plaintiffs' expert Stewart has no basis for judging Maritime Logistics' conduct against the appropriate standard of care because he does not know the maritime law which sets the standard.

Admitting ignorance of the federal maritime law of towing, plaintiffs' expert Robert Stewart fashioned his own standard of care. He then opined at deposition defendants failed to meet it. However, expert Stewart's alleged standard of care contradicts applicable law and lacks the foundation necessary to meet admissibility requirements under the Federal Rules of Evidence.

Expert Stewart's opinion as to who bears the burden of making sure that a towed vessel is "seaworthy" (i.e. fit for its intended voyage) is dead wrong. Mr. Stewart repeatedly testified at his deposition it is the towing company, not the owner of the tow, that has an absolute duty to ensure the seaworthiness of the tow. But, Mr. Stewart has the obligation backward. For at least one hundred years, it has been both the maritime custom---and the legal rule and standard----that the owner of the tow (in this case, plaintiffs) has the absolute obligation to tender a seaworthy vessel for towing.

Contrary to well-established law, expert Stewart testified at deposition plaintiffs did not have a duty to tender the ALBION for towing in seaworthy condition:

> Q: Do you believe a person tendering a vessel for a tow has an obligation to tender a seaworthy vessel?
>
> A: No, not necessarily. …

[Deposition of Robert Stewart, p. 55:19-21.]

When asked to comment on the opinion of defense expert Capt. Blacksmith about the duty of a person tendering a vessel for towing, expert Stewart testified:

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

A: ...Condition of the towed vessel. Captain Blacksmith says: As a matter of industry practice, it is the duty of the owner to provide a seaworthy vessel capable of being towed.

Q: You disagree with that?

A: I disagree with that.

[Deposition of Robert Stewart, p. 79:8-13.]

Later he commented on the same opinion of Capt. Blacksmith:

A: It is the duty of the owner to provide a seaworthy vessel capable of being towed. I don't believe that that's true.

Q: Okay. All righty. If that were true, that would surprise you.

A: It would surprise me.

[Deposition of Robert Stewart, p. 79:23 – 80:3.]

With respect to the duty of the tugboat operator to inspect the tow, expert Stewart once again erroneously testified, contrary to long established law, that a towing company must conduct a detailed inspection of the vessel it is going to tow:

Q: What degree of inspection do you think that a towing company has a duty to perform of a vessel that it's going to tow, how detailed of an inspection?

A: I think that's -- inspection is multifaceted, okay? There's inspection that is done to look at the soundness of the vessel to tow, and that's done before the tow is made up and everything is ready to go. There is inspection that is done of the towing gear and equipment as the tow is made up...

A: As a minimum, I would have the expectation that they would be in every space, whatever -- however the layout of the boat is, every space.

[Deposition of Robert Stewart, pp. 38:24 – 39:18.]

He further testified Maritime Logistics breached the standard of care by not conducting an additional inspection of the ALBION before departing Morro Bay on the way to Reedsport:

Q: And they were negligent by not doing a further inspection in Morro Bay?

A: Yes.

[Deposition of Robert Stewart, p. 68:22-24.]

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

Indeed, expert Stewart erroneously concluded Maritime Logistics was liable for the tow because it did not conduct an additional detailed inspection inMorro Bay:

> Q: So I guess I want to try to understand. Your conclusion here is that when they stopped in Morro Bay, they didn't conduct another thorough investigation; whatever happened to the boat later was their responsibility? Is that your answer?
>
> A: Yes.

[Deposition of Robert Stewart, p. 45:1-7.]

Contrary to long-established law, expert Stewart was wrong as a matter of law when he testified Marine Logistics had a duty to install equipment or take steps to make the ALBION seaworthy before the tow departed San Diego by adding equipment to detect the ingress of water into the ALBION, such as a bilge strobe light:

> Q: You mentioned -- looking at your opinion, the opinion, you have five opinion bullet points. You said: If greater care had been used in preparing the vessel to be towed, such as adding a bilge strobe light or painting hull draft markings on the exterior of the hull, the change in draft could have been observed earlier. And the onboard or towing vessel's pumps could have been used to keep the Albion afloat. So let's break that down a little bit. It's your opinion that the tug company, Maritime Logistics, should have added a bilge strobe light to the Albion?
>
> A: A bilge strobe light is one of a number of options, yes.
>
> Q: And so you're saying that, in your opinion, that was the duty of Maritime Logistics, to add that to the Albion?
>
> A: Right. To maintain the safety of the vessel while under tow.
>
> Q: Okay. Well, we're not talking about while under tow. You said it should have been added before they started?
>
> A: Right. But that was to maintain the safety of the vessel while under tow?
>
> Q: I see. So you're saying that, in your opinion, that was their duty to add that--
>
> A: If that was the choice that they took, yes.
>
> Q: And your opinion is also that Maritime Logistics should have painted the hull of the Albion, draft marks on it?
>
> A: That is certainly another choice. You don't necessarily need to put the strobe light on.

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

1          [Deposition of Robert Stewart, pp. 45:8 – 46:15.] See also Stewart deposition p.55:6-18,

2 where he opined that Defendants were obliged to maintain the ALBION in a seaworthy

3 condition.

4          Incredibly and directly contrary to countless reported cases, Stewart testified if the

5 owner of a vessel to be towed does not know anything about boats, the towing company must

6 bear the burden of making it seaworthy:

7                     Q: So if the owner says: I don't know anything about boats. Take
                    my boat.

8
                    A: There is certainly that.
9

10                     Q: Then in that situation, the towing company then has to take the
                    steps to make sure the boat is seaworthy and has the proper
11                     equipment, and all that stuff. Is that your opinion?

12                     A: Yes.

13        [Deposition of Robert Stewart, p. 57:10-17.]

14          In a word, expert Stewart's opinions are wrong and contrary to well-established

15 maritime law.

16          Not only was expert Stewart wrong as a matter of law about the duties imposed on a

17 person tendering a vessel for towing and the towing company, but also he was wrong as a matter

18 of law about the basis for liability.

19          There is no question a towage contract does not give rise to a bailment. And, there is no

20 question the towing vessel is not the insurer of the towed vessel and strictly liable for its loss.

21 Negligence must be proved. *Stevens v. THE WHITE CITY*, 285 U.S. 195 (1932). Nonetheless,

22 Stewart opined Maritime Logistics was liable for the loss of the Albion on bailment and strict

23 liability theories:

24                     Q: Is it your opinion that whenever a towing company loses its
                    tow, it's liable if it looked good when it started on the voyage?
25

26                     A: In the very broadest sense?

27                     Q: Yeah.

28                     A: Yeah, I think so.

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

[Deposition of Robert Stewart, pp. 42:22 – 43:2.]

> Q: And it's your opinion that if everything looks fine, and the towing company looks around, and everything looks ship shape, and they start to tow, and the boat sinks, that the towing company's problem? Is that your opinion?
>
> A: Yes.

[Deposition of Robert Stewart , p. 57:18-23.]

> Q: If the towing company looked at it and found it wasn't taking on water, it looked ship shape to them, and the owner says: this boat is ship shape, is it your opinion that the towing company is stuck with that?
>
> Mr. Wolfe: Objection. Incomplete hypothetical.
>
> Q: I believe they are. They've taken responsibility for the vessel, and they're responsible for it.

[Deposition of Robert Stewart, pp. 64:22 – 65:5.]

**H.**    **Under Daubert principles, this court should exclude Capt. Stewart's testimony because inter alia, it contradicts applicable law.**

**1.**    **In admiralty, the trial judge is the "gatekeeper" of expert testimony.**

Expert opinion testimony is appropriate when the factual issue is one that the trier of fact would not ordinarily be able to resolve without technical or specialized assistance. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 2796 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156, (1999). In admiralty, the trial judge acts as a "gatekeeper" of expert testimony. *Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*, 2005 AMC 2307, 2313 (D. Ark. 2005). In that role, the trial judge must ensure the proffered expert testimony meets the requirements of FRE 702. *Id.* The party offering the expert testimony must prove the witness is qualified to testify and the testimony is admissible by a preponderance of the evidence. *Id.*

Plaintiffs' expert Stewart may be qualified to give expert testimony in some maritime actions on certain topics. However, his opinion about the responsibilities of the parties to a towage contract is not admissible in this case because it does not meet the standards for the admissibility of expert testimony under FRE 702.

-- 11 --

## 2.    The purpose and admissibility of expert testimony.

Rule 702 of the Federal Rules of Evidence addresses expert testimony:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The party proffering the expert has the burden of establishing the pertinent admissibility requirements are met by a preponderance of the evidence. *Lust v. Merrrell Dow Pharmaceuticals, Inc.* 89 F.3d 594, 598 (9th Cir. 1996).

In *U.S. v. Hermanek*, 289 F.3d 1076 (9th Cir. 2002), a criminal case, the district court held the proferred expert's testimony inadmissible because the expert failed to lay a reliable foundation to establish the basis for his testimony.  His testimony involved his interpretation of new words and phrases he claimed were "commonly used" in the illicit drug industry  to reference cocaine (as opposed to the medical/pharmaceutical industries).  The court stated:

> Rule 702 assigns to the district court the rule of gatekeeper and charges the court with assuring that expert testimony 'rests on a reliable foundation and is relevant to the task at hand.' [citing Daubert v. Merrell Dow Pharmacy, 509 U.S. 579, 597 (1993). The gatekeeper role 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is...valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' [citation omitted].  In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L.Ed. 2d 238 (1999)...the Supreme Court made it clear that that the district court's duty to act as gatekeeper and to assure the reliability of proffered expert testimony before admitting it applies to all (not just scientific) expert testimony.

*Id.* at 1093.

As a further ground for holding the expert's testimony inadmissible, the court found although the purported expert was generally qualified to talk about terminology used in the illicit drug trade, these general qualifications were insufficient to establish the reliability of his interpretations as to *new* words or phrases. *Id.* at 1093-94. The Court stated:

> These qualifications are relevant, but standing alone, they neither explain nor establish the reliability of [the expert's] interpretations of new words and phrases. It is well settled that bare qualifications

– 12 –

> alone cannot establish the admissibility of scientific expert testimony… [Citation omitted]. After *Kumho,* that proposition indisputably carries over to nonscientific testimony as well.

*Id.*

In *Atmel Corp. v. Information Storage Devices, Inc.,* 189 F.R.D. 410 (N.D. Cal. 1999), the Court excluded the proffered testimony of an expert on the grounds it was not based on a reliable foundation. *Id.* at 416. In *Atmel,* plaintiff claimed the defendant misappropriated its trade secrets. In support of its claim of trade secrets that were not in the public domain, plaintiff proffered the testimony of a purported expert in the semiconductor business to testify because he personally had never heard of the seventeen claimed trade secrets at issue prior to litigation, they must have been true trade secrets and not information in the public domain. *Id.*

The Court found the purported expert's testimony was based on nothing more than the expert's "unrefreshed recollection of his individual experience in the industry, long past, and not on a survey of literature or other research" and excluded it. *Id.* The Court further found the expert failed to conduct a "professionally responsible search and review" and if he had performed a professionally responsible search and review, he may have discovered evidence some of the alleged trade secrets were already in the public domain. *Id.*

### 3. Legally unsupportable expert opinions cannot support the trier of fact's decision

In *Lucent Technologies v. Gateway Inc.,* 509 F. Supp. 2d 912 (S.D. Cal. 2007), Judge Brewster of this court ruled an expert witness's legally unsupportable opinion cannot properly provide the basis for the trier of fact's decision. In *Lucent,* the Court granted defendant judgment as a matter of law on claim #4 on the grounds that the *legally unsupportable* opinions of plaintiff's expert could not support the jury's verdict. *Id.* at 921. The Court stated with respect to expert opinions:

> 'When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury verdict.' *Id.* at 921-922.

The court further noted an expert's opinion that is incorrect *because it contradicts applicable law,* should be excluded, citing *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1159 (1998).

1    An admiralty court reached the same result, under Daubert principles, in *Vanderpool v. Ritchey*

2    *L. Edmondson*, 2005 U.S. Dist. LEXIS 8611 (E.D. Tenn. 2004), where the court ruled an expert

3    opinion was fatally flawed (and properly excluded) when it was based upon a legally incorrect

4    standard of conduct.  Under this circumstance, it was not sufficiently reliable to be offered into

5    evidence.

6          Here, there is no question that Capt. Stewart's opinions are both legally unsupportable

7    and contradict applicable law.  Accordingly, his testimony should be excluded under federal law

8    principles.

9          **4.     Expert Stewart's expected testimony will be of no value to the Court and
            should be excluded.**
10

11          Whether the owner of a vessel tendered for towing and the company towing that vessel

     met the standard of care cannot be resolved without specialized assistance from an expert.  The
12
     expert provides assistance to the court in defining the standard of care and whether it was met.
13
     However, expert Stewart's expected testimony will be of no assistance of any kind to this Court.
14
     Instead, it will invite error by seeking application of the wrong standard of care.  He is wrong as
15
     a matter of law about the obligations of the parties to a towage contract and he is wrong as a
16
     matter of law about whether Maritime Logistics met its obligations.
17
     ///
18
     ///
19
     ///
20
     ///
21
     ///
22
     ///
23
     ///
24
     ///
25
     ///
26
     ///
27

28

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART

III. **CONCLUSION**

Whether Maritime Logistics met the standard of care can only be determined with reference to long-established case law. Expert Stewart admits he is not familiar with that case law. Therefore, to the extent expert Stewart's testimony is about another standard of care he fashioned that is at odds with the standard under long-established federal maritime law, it should be excluded.

DATED: April 10, 2009

BULLIVANT HOUSER BAILEY PC

By _____s/Marilyn Raia_____
Marilyn Raia
Norman J. Ronneberg, Jr.

Attorneys for Tug Michael Uhl, Her Engines, Machinery, Tackle, Equipment, Furnishings and Appurtenances, in Rem, and Maritime Logistics, Inc., Frank Loving, an Individual and Blaine Hughes, an Individual in Personam

11295659.2

MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ROBERT STEWART