Marilyn Raia (SBN 072320)
Norman J. Ronneberg, Jr. (SBN 68233)
BULLIVANT HOUSER BAILEY PC
601 California Street, Suite 1800
San Francisco, California 94108-2823
Telephone:   415-352-2700
Facsimile:   415-352-2701
Email:       marilyn.raia@bullivant.com
             norman.ronneberg@bullivant.com

Attorneys for Defendants
TUG MICHAEL UHL; MARITIME
LOGISTICS, INC.; FRANK LOVING; and
BLAINE HUGHES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN CARPENTER AND TRACY RAGSDALE, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>Tug MICHAEL UHL, her engines, machinery, tackle, equipment, furnishings and appurtenances, in rem, and MARITIME LOGISTICS, INC., FRANK LOVING, an individual and BLAINE HUGHES, an individual in personam,<br><br>Defendants. | Case No.: 07-CV-0166-DMS (POR)<br><br>**MOTION IN LIMINE: INAPPLICABILITY OF PENNSYLVANIA RULE**<br><br>Trial Date: April 27, 2009<br>Time: 8:00 AM<br>Dept: Hon. Dana M. Sabraw |

Defendants move in limine for an order precluding plaintiffs from offering any evidence of a violation of a navigation rule regarding posting of lookout as a basis for presumed liability. Plaintiffs assert defendants' purported breach of the lookout provision of 33 U.S.C. § 2005 gives rise to defendants' presumed liability under "the Pennsylvania Rule" (see plaintiffs' memorandum of contentions of fact and law at p. 15). However, the Pennsylvania Rule has no relevance to this action for the following reasons and may not be cited or argued by plaintiffs:

1) The specific statute cited by plaintiffs has been repealed. More pertinently, 33 U.S.C. § 2005 is an "inland" navigational rule, which does not govern this "high seas" case. Accordingly, it cannot serve as the foundation for a Pennsylvania Rule violation;

2) The international waters lookout rule (applicable to vessels sailing along the Pacific Coast), was promulgated and accepted by Congress for the sole purpose of preventing collisions at sea. This is not a collision case. Therefore, any breach of a regulation designed to prevent collisions does not give rise to the Pennsylvania Rule burdens.

3) Lookout rules, because they are intended to prevent collisions, require lookouts to be posted at or near the bow of a vessel, looking forward to oncoming or approaching traffic. Such a lookout would not have seen the foundering ALBION 1500 feet astern of the towing tug;

4) In towboat cases---in the absence of a collision threat or dangerous sea/weather conditions---there is no legal or statutory obligation, to have a "dedicated" lookout constantly observing the tow.

A.  **The Pennsylvania Rule**

In 1873, the Supreme Court established the evidentiary burden shifting rule for maritime collision cases, now popularly known as the Pennsylvania Rule:

> "when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been."

*THE PENNSYLVANIA*, 86 U.S. 125, 136 (1873).

In the Ninth Circuit, the Pennsylvania Rule requires a party who has violated a statute intended to prevent collisions to present clear and convincing evidence the violation was not a proximate cause of an ensuing collision. *Fireman's Fund Ins. Companies v. Big Blue Fisheries Inc.*, 143 F.3d 1172, 1174 (9th Cir. 1998).

B. **The former 33 USC § 2005 was an "inland" navigational rule, inapplicable to this open seas case**

33 U.S.C. § 2005 (like all of the statutory inland navigation rules) was repealed by Congress in 2004. See Public Law 108-292, Title III, sec. 303(a)(c), 118 Stat. 1042. Congress ordered the Coast Guard to promulgate new inland navigational rules in the Code of Federal Regulations (See, 33 U.S.C. § 2071), which are now found at 33 C.F.R., Ch. 2, subchapter E (inland navigational rules).

These new regulations, including the successor to 33 U.S.C. § 2005, apply only to America's inland rivers, harbors, lakes, etc.[1] The open seas (which is where the instant casualty occurred) and other international waters are governed exclusively by the International Regulations for Preventing Collisions at Sea 1972. 33 C.F.R. 80.01. COLREGS is an acronym for the International Regulations for Preventing Collisions at Sea, an international treaty enacted into law by Congress. *Fireman's Fund*, 143 F.3d at 1174 n.3.

C. **COLREGS violations only give rise to Pennsylvania Rule liabilities in the collision context**

If any lookout rule applies to this action, it must be Rule 5 of the 72 COLREGS (28 U.S.T. 3459), which governs navigation outwards of America's coastlines, and which provides:

> every vessel shall at all times maintain a proper lookout by sight and hearing as well as the available means appropriate in the prevailing circumstances and conditions, so as to make a full appraisal of the situation and of the risk of collision."

See the International Rules of the Road, 33 U.S.C. § foll 1602.[2]

The full name of the Regulations makes it perfectly that they were designed specifically to prevent vessel collisions. See also *Turecamo Maritime, Inc. v. Weeks Dredge No. 516*, 872 F. Supp. 1215, 1229 (S.D.N.Y. 1994); *New York & Cuba Mail SS Co. v. United States*, 300 F. 827, 829 (S.D.N.Y. 1924) and *Societa Anonima Navigazione Alta Italia v Oil Transport Co.*, 232

---

[1] See former U.S.C., 33 U.S.C. § 2003(o) which limited the applicability of 33 U.S.C. § 2005 to inland waters, as defined therein. 33 C.F.R. 88.03, which adopted the definitions of 33 U.S.C. § 2003 and 33 C.F.R. 80.01, and 80.1132-1134.

[2] The COLREGS' text has been removed from the U.S. Code and the Code of Federal Regulations, but remains in force. See 33 U.S.C. § 1602, West Electronic Research Notes

F.2d 422, 427 (5th Cir. 1956). [The purpose of the navigational rules is to prevent collision[3]]. Rule 5's lookout requirement is specifically understood to be an anti-collision rule. See *Moore v. Wauker Leigh Matthews*,[4] 2006 AMC 2609, 2614 (D. Md. 2006) and *In re Via Sales & Leasing, Inc.*, 499 F. Supp. 2d 887, 891 (E.D. Mich. 2007) ["The rule requiring a lookout was intended to prevent collision."].

The Supreme Court made the purpose of the international navigation rules crystal clear in *THE UMBRIA*, 166 U.S. 404, 419-420 (1897), when it explained the nautical rules enacted by Congress "are intended solely for the prevention of collisions and if it be clearly apparent that the observance of the rule would not have prevented a collision…the non-observance of such rule becomes immaterial." See also Prosser on Torts 200, 1971 ed. [violation of a statutory duty does not give rise to liability unless of the kind the statute was designed to prevent]. Therefore, even if defendants failed to maintain a proper lookout of the tow attached to the tug's stern (which is denied), the collision-prevention mandate of Rule 5 cannot be used as the basis of a Pennsylvania Rule violation under the facts of this case.[5]

---

[3] Navigational rules of the road have also been extended to prevent against "allisions", where a fixed object such as a pipeline, wharf or underwater obstruction is struck by a moving vessel. See, e.g., *Evergreen Intl. SA v. Norfolk Dredging Co.*, 531 F.3d 302, 310 (4th Cir. 2008).

[4] "AMC" (American Maritime Cases) is a compilation of most of the federal and state maritime law opinions in the United States and Canada. Cases reported only in AMC are regularly cited to by **all** courts sitting in admiralty. See e.g., *American Dredging Co. v. Miller*, 510 U.S. 443, 468-469 (1994); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354(1959); *May v. Hamburg-Amerikanische Packetfahrt Aktiengesellschaft*, 290 U.S. 333,350 (1933); *Trans-Tec Asia v. M/V HARMONY*, 518 F.3d 1120, 1130 (9th Cir. 2008); *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 839 (9th Cir. 2002); *Hunley v. Ace Maritime Corp.*, 927 F.2d 493, 496 (1991); and *Torres v. M/V FUICINO FISHING VESSEL*, 141 F. Supp. 2d 1028, 1031 (S.D. Cal. 2001). The Southern District of California Court Library has a complete set of American Maritime Cases available for reference.

[5] See also Schoenbaum, Admiralty & Maritime Law § 5-2 ("Negligence may be shown by evidence of violation of a statute or regulation. The statute or regulation must be determined to be applicable, however; the plaintiff must be included in the class of persons protected and the harm suffered must be the kind that the statute or rule was designed to prevent.")

D. **Any rule which requires a lookout to be posted at or near the bow of a vessel is irrelevant.**

Defendants correctly cite to *Tug Ocean Prince Inc. v. United States*, 584 F.2d 1151 (2d Cir. 1978) as authority for the proposition that the navigational lookout rule applies to tugboats. *Tug Ocean Prince*, however, was a collision case, in which the tugboat was faulted for not having a lookout observing the waters and obstructions <u>in front of his vessel</u> ["The RED STAR failed to overcome its burden of showing that by all reasonable probabilities its failure to post a lookout did not contribute to the cause of the collision." *Id.* at 1160]

As the Supreme Court explained in *British Columbia Mills, Tug & Barge Co. v. Mylroie*, 259 U.S. 1, 7 (1922), however, a "lookout is for the purpose of seeing and advising those navigating the ship of what is in the way…" of his vessel. See also *Inland Oil & Transport Co. v. Ark-White Towing*, 696 F.2d 321, 325 (5th Cir. 1983):

> In order to be guilty of a statutory fault, [the towboat] must have been negligent in failing to provide a lookout <u>at the head of the tow</u>. [emphasis added.]

and *Alaska Packers Ass'n, Inc. v. O/S EAST POINT*, 421 F. Supp. 48, 52 (W.D. Wa. 1976), and cases cited therein [To comply with the international navigation rules, a "lookout must be stationed as far forward and as near the water as possible to be in compliance." (interior cites omitted)].

A bow lookout on the tug MICHAEL UHL would have been next to useless in observing any problems with the ALBION, 1500 feet behind the vessel. As a result, no Pennsylvania Rule liabilities flow from any failure to have such a lookout. See *THE UMBRIA*, supra, at 420 [the non-observance of a navigational rule is irrelevant if it is unlikely to have prevented a casualty].

E. **Maritime Logistics had no duty to constantly monitor the ALBION, or to have one crewmember do nothing but act as lookout.**

As evidence at trial will show, the crew of the Tug Michael UHL at all times maintained a reasonable and proper lookout for its tow.

Contrary to the erroneous opinions of plaintiffs' experts, there is no statutory duty for a tugboat to post a lookout to constantly observe its tow, 24/7. When, as here, the weather was fair and the seas were calm, the tug must only "maintain some reasonably close observation of its

tow; the law does not require constant surveillance absent some reason to anticipate disaster." 8 Benedict on Admiralty (7th ed. Rev.) sec. 14.05[5]. See also, *Massman Constr. Co. v. Sioux City & New Orleans Barge Lines*, 462 F. Supp. 1362, 1368 (W.D. Mo. 1979)[Tug has no duty to post a lookout, or maintain constant surveillance of tow]; *South Inc. v. Moran Transp.*, 1965 AMC 2559, 2567 (S.D.N.Y. 1966), *aff'd*, 360 F.2d 1002, 1005 (2d Cir. 1966); and *A.S. Wikstrom, Inc. v. THE TUG JULIA C. MORAN*, 190 F. Supp. 250, 252 (S.D.N.Y. 1960)["In the absence of any reason to expect a perilous condition to develop, constant surveillance of the tow is not mandated."] Furthermore, in the Ninth Circuit, "a vessel owner does not have, as a matter of law, a non-delegable duty to post an independent dedicated lookout at all times....Rather, what constitutes a proper lookout depends on the facts and circumstances of each case." *Western Pioneer Limitation Proceeding*, 2002 AMC 1743, 1747 (W.D. Wa. 2002), and cases cited therein.

## II. CONCLUSION

Plaintiffs' attempted reliance on a repealed navigation statute to trigger the Pennsylvania rule's presumption of fault is misplaced. Navigation on the high seas, where the subject incident occurred, is subject to the International Regulations for Preventing Collisions at Sea [COLREGS] not the inland rules of the road which plaintiffs cite.

A lookout, stationed at the bow of the vessel, is required under the COLREGS to prevent collisions and allisions. Such lookout would not have prevented the sinking of the ALBION.

A towing tug has no duty under the COLREGS, the inland rules of the road, or judicial precedent to constantly monitor its tow. When the weather is fair and seas are calm and no peril is anticipated, constant surveillance of the tow is not required.

///
///
///
///
///
///

Therefore any evidence or testimony regarding an alleged violation of the navigation rule requiring a lookout should be excluded.

DATED: April 10, 2009

BULLIVANT HOUSER BAILEY PC

By     /s/Marilyn Raia
MARILYN RAIA
NORMAN J. RONNEBERG, JR.
Attorneys for Defendants
TUG MICHAEL UHL; MARITIME LOGISTICS, INC.; FRANK LOVING; and BLAINE HUGHES

11472223.1