Robert Wolfe, Esq. (State Bar No. 131582)
bwolfe@elllaw.com
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Blvd., 16th Floor
Los Angeles, CA 90067
Telephone (310) 552-3800
Facsimile (310) 552-9434

Alan Nakazawa, Esq. (State Bar No. 84670)
alan.nakazawa@cnc-law.com
Ken Sato, Esq. (State Bar No. 252543)
ken.sato@cnc-law.com
COGSWELL NAKAZAWA & CHANG, LLP
444 West Ocean Boulevard, Suite 1250
Long Beach, California 90802-8131
Telephone (562) 951-8668
Facsimile (562) 951-3933

Attorneys for Plaintiffs
Alan Carpenter and Tracy Ragsdale

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN CARPENTER AND TRACY RAGSDALE, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>Tug MICHAEL UHL, her engines, machinery, tackle, equipment, furnishings and appurtenances, *in rem*, and MARITIME LOGISTICS, INC., FRANK LOVING, an individual, and BLAINE HUGHES, an individual *in personam*,<br><br>Defendants.<br>_____<br>MARITIME LOGISTICS, INC. A corporation; FRANK LOVING; BLAINE HUGHES,<br><br>Counterclaimants,<br><br>ALAN CARPENTER; TRACY RAGSDALE,<br><br>Counterdefendants. | CASE NO. 07CV0166 DMS POR<br><br>**OPPOSITION TO DEFENDANTS' MOTION IN LIMINE RE: INAPPLICABILITY OF PENNSYLVANIA RULE**<br><br>Trial: April 27, 2009<br>Date: 9:00 a.m.<br>Courtroom: Honorable Dana M. Sabraw |

Plaintiffs Alan Carpenter and Tracy Ragsdale (hereinafter collectively "Plaintiffs") hereby submit their opposition to Defendants' Motion in Limine re: Inapplicability of Pennsylvania Rule ("Motion").

## I.

## INTRODUCTION

A towing company is required to maintain a proper lookout for hazards and to keep a close observation of the tow during the towage. *See PRINCE v. United States,* 584 F.2d 1151, 1159 (2nd Cir. 1978); *Aiple Towing Company, Inc. v. M/V LYNNE E. QUINN,* 534 F. Supp. 409, 411 (E.D. La. 1982)(tug found negligent in failing to keep proper watch over tow). Defendants do not appear to dispute that a tug is required to maintain a proper lookout during navigation for obstructions and hazards or that the tug company is required to maintain a close observation and watch of the a tow during the towage. The parties disagree over the adequacy of the lookout and watch under the circumstances of this case . This is a factual issue based on the facts and circumstances. *See China Union Lines, Ltd. v. A.O. Anderson & Co.,* 364 F. 2d 769, 783 (5th Cir. 1966), *cert denied,* 386 U.S. 933, 87 S. Ct. 955 (1967). The parties also disagree as to the cause of the ALBION sinking and whether any failure to maintain a proper lookout and watch caused or contributed to the sinking.

The issue raised by this Motion in Limine is whether Plaintiffs may offer evidence that the tug MICHAEL UHL violated Rule 5 of the International Regulations for Preventing Collisions at Sea, 33 U.S.C. Foll. Sec. 1602 (the "COLREGS" or "Lookout Rule") which may give rise to the Pennsylvania Rule relating to the burden of proof on causation. Defendants' Motion in Limine seeks a ruling from the Court that the Pennsylvania Rule has no relevance to the action and may not be cited and argued by Plaintiffs. Defendants' Motion does not seek

2
OPPOSITION TO MOTION IN LIMINE RE: PENNSYLVANIA RULE

to preclude evidence on the adequacy of the lookout for navigation hazards and obstructions or the adequacy of the watch of the tow to the extent it relates to the issue of negligence of Defendants. Independent of any presumption or statutory violation, Plaintiffs will prove that Defendants' negligence caused the sinking of the ALBION and the damages arising therefrom.

## II.
## THE PENNSYLVANIA RULE APPLIES TO TOWAGE AND NON-COLLISION CASES

The Pennsylvania Rule is a presumption of causation which applies when a party violates a navigation or safety statute or regulation and a casualty occurs. Under this rule, "the burden of proof, including the burden of persuasion, is effectively shifted as to the causation issue, once it is established that a vessel is guilty of violating a statute or regulation." 2 Thomas J Schoenbaum, *Admiralty and Maritime Law,* Section 14-3 (2d. Ed. 1994); *The PENNSYLVANIA v. Troop,* 86 U.S. (19 Wall.) 125 (1874). The Pennsylvania Rule shifts the burden of proof on the causation issue to the violating party to prove that the statutory violation not only did not, but that it could not have contributed to the loss or casualty. *Candies Towing Co, Inc. v. M/V B&C ESERMAN,* 673 F.2d 91, 93 (5th Cir. 1982); *In The Matter of the Complaint of Tug Ocean Prince, Inc.,* 584 F.2d 1151, 1160 (2nd Cir. 1978).

The Pennsylvania Rule applies to towage cases. *Candies Towing Co., Inc. v. M/V B&C ESERMAN,* 673 F.2d 91,94 (5th Cir. 1982); *The CARBONERO,* 106 F. 329, 335 (1st Cir. 1901); *See also* Parks & Catell, *The Law of Tug, Tow and Pilotage,*(3d ed.), p. 23 (citing cases). Defendants contend that the Pennyslvania Rule is limited to violations of statutes or regulations intended to prevent collisions. Although *THE PENNSYLVANIA* involved a collision, the

Pennsylvania Rule has been held to apply not only to collision and allision cases, but also to non-collision cases where there were "violations of statutes intended to prevent the injury that actually occurred." *United States v. Nassau Marine Corp.*, 778 F.2d 1111, 1116 (5 Cir. 1985)(sinking due to discoverable structural failure). *See also In Re Seaboard Shipping Corp.*, 449 F. 2d 132, 136 (2nd Cir. 1971), *cert den.*, 406 U.S. 949 (1972)(Pennsylvania Rule does not only apply in collision cases)(citing *Kernan v. American Dredging Co.*, 355 U.S. 426 (1958) (fire on a tug caused by open-flame kerosene lamp carried on scow in statutory violation); *The Denali*, 112 F.2d 952 (9th Cir. 1940) (stranding case)).

The case of *Candies Towing Co., Inc. v. M/V B&C ESERMAN*, 673 F.2d 91 (5th Cir. 1982) is instructive. In *Candies Towing*, a barge being towed by a tug sank while being towed from Florida to North Carolina. The District Court found that the Pennsylvania Rule did not apply since no collision had occurred. Id. at 93. On appeal, the Fifth Circuit held that the District Court erred as a matter of law in concluding that the Pennsylvania Rule applied only to collision cases. Id. at 93-94. The Court of Appeal went on to find that the tug's statutory violations regarding qualifications and watchstanding at sea did not cause or contribute to the sinking. Id. at 95.

### III.

### THE LOOKOUT RULE APPLIES TO NON-COLLISION CASES

Plaintiffs erroneously cited the former Inland Navigational Rules, 33 U.S.C. §2005, instead of the International 1972 COLREGS (28 U.S.T. 3459) for navigation on the high seas in their Memorandum of Contentions of Fact and Law at p. 15. However, the former Inland Navigation lookout rule is identical to the lookout rule governing navigation in the open seas. *See* 33 U.S.C. Foll. Sec. 1602.

///

Rule 5 of the 72 COLREGS provides:

"Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision."

Failure to post an appropriate lookout is a statutory violation triggering the Pennsylvania Rule. *Trinidad Corp. V. S.S. KEIYOH MARU*, 845 F. 2d 818, 826 (9th Cir. 1988); *First Nat'l Bank of Chicago v. Material Serv. Corp.*, 544 F.2d 911, 918 (7th Cir. 1976); *Diesel Tanker W.A. Weber, Inc. v. Tug Margaret McAllister*, 366 F. Supp. 974, 976 (S.D.N.Y. 1973)(failure to have a lookout is a statutory fault which triggers the Pennsylvania Rule).

The statutory lookout rule has been applied to tug boats and towage. *See Tug Ocean Prince*, 584 F.2d 1151 (2nd Cir. 1978); *A.G. Staley Mfg. Co. v. Puerto Rico Lighterage*, 323 F.Supp. 27, 38 (E.D. La. 1970), *aff'd*, 438 F.2d 1 (5th Cir. 1971).

Significantly, and contrary to Defendants' contention, the statutory lookout rule has been applied to non-collision cases such as allisions (e.g. where vessels make contact with a dock), strandings, or cases where vessels or tows strike obstructions or hazards. *Tug Ocean Prince*, 584 F.2d 1151 (2nd Cir. 1978)(pilot alone in the wheelhouse was inadequate lookout who failed to locate buoy which caused barge to strand on a rock in Hudson River); *Moran Towing v. City of New York*, 620 F.2d 356, 358 (2nd Cir. 1980)(inadequate lookout contributed to the collision between a crane and the bridge, with the lookout's failure constituting a statutory fault); *Zeller Marine v. SS Chemical Transporter*, 307 F.Supp. 138 (S.D.N.Y. 1969)(tanker collided with bridge due to inadequate lookout); *Caravel/Woodwind Charters v. Tahoe Keys Marina*, 2006 AMC 1747 (E.D. Ca 2006)(allision with stationary object); *Omega Protein*, 2009 AMC 245 (5th Cir. 2008)(violation of COLREG Rule 5 when vessel hit platform); *Crown*

*Zellerbach Corp. v. Willamette-Western Corp.*, 519 F.2d 1327 (9th Cir. 1975)(negligent failure to maintain a lookout for overhead obstructions).

## IV.

## IF, AS DEFENDANTS CONTEND, THE ALBION STRUCK AN OBJECT, OBSTRUCTION OR HAZARD, AND THE TUG FAILED TO MAINTAIN A PROPER LOOKOUT, THE PENNSYLVANIA CAUSATION RULE SHOULD APPLY

James Wood, one of Defendants' experts, opined during his deposition that he believes the ALBION sank because it struck something such as a submerged container, log, or debris. *See* Exhibit "A" to Declaration of Alan Nakazawa.

During his deposition on February 17, 2009, Mr. Wood testified as follows:

**Question:**
"You said you think it was caused by the ALBION striking something?"
**Answer:**
"I believe that it's probable that the ALBION hit a submerged container, log, debris. It was the rainy season. At certain times —I live on the central cost and I've traveled extensively. Certain areas of the world, the further north you go, and more prominent it gets. Not so much down in Southern California because we don't have a lot of trees and we don't have a lot of rivers, but as you start coming north, you start running into more trees and more river and more tree stumps. And following the rainy season, stuff comes down the river.

| | |
|---|---|
| 1 | You can walk out on the beach. You can see all the beaches are |
| 2 | covered with drifttwood and tree stumps. Even down in Ventura, that |
| 3 | happens. |
| 4 | And I believe that there was a lot of debris in the water |
| 5 | following that rainy season, and it's probable that the vessel struck |
| 6 | something like that, a submerged object or whatever. You'll get logs |
| 7 | that come all the way down from up north because of the Japanese |
| 8 | current. The Japanese current leaves Japan; it goes up along the |
| 9 | Aleutians, and then it swings back down along Alaska and comes |
| 10 | down the coastline." |
| 11 | |
| 12 | If the Court were to find, as Defendants' expert contends, that the ALBION |
| 13 | hit an obstruction, hazard or object, the collision could have been prevented with a |
| 14 | proper, vigilant lookout. *See Andrews v. United States*, 801 F.2d 644, 648 (3rd Cir. |
| 15 | 1986)("An unexplained failure to see what ought to be seen is evidence of a faulty |
| 16 | lookout.") If the MICHAEL UHL's lookout failed to see obstructions that a |
| 17 | proper, vigilant lookout would have discovered under similar circumstances, and |
| 18 | as a result failed to avoid the obstruction puncturing the ALBION, a statutory |
| 19 | violation of Rule 5 of the COLREGS could have occurred which should give rise |
| 20 | to the Pennsylvania Rule and the shifting of the burden to Defendants to disprove |
| 21 | causation. |
| 22 | /// |
| 23 | /// |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

# V.

# THE ADEQUACY OF THE LOOKOUT ON BOARD THE TUG IS A QUESTION OF FACT TO BE DETERMINED BASED ON ALL FACTS AND CIRCUMSTANCES

The Supreme Court in *The Ariadne*, 13 Wall. 475, 80 U.S. 475, 478-79 (1861), clearly explained that:

> "The duty of the lookout is of the highest importance. Upon nothing else does the safety of those concerned so much depend... Every doubt as to the performance of the duty, and the effect of non-performance, should be resolved against the vessel sought to be inculpated until she vindicates herself by testimony conclusive to the contrary."

Defendants contend that the lookout rule requires that a lookout be posted at or near the bow of a vessel and that in this case, a bow lookout would have been irrelevant in observing the ALBION.

First, contrary to Defendants' contention that the lookout rule only requires a lookout stationed at the bow, there is no rule requiring the posting of a lookout at a specific location. Rather, lookouts must be positioned at a point best suited for that purpose, having due regard for the circumstances of the case and the conditions of the weather. *The Vedamore*, 137 F. 844, 845 (4th Cir. 1905)("While it is true that no specific location on a vessel is prescribed for the lookout, it goes without saying that such location should be at the point best suited for the purpose alike of hearing and observing the approach of objects likely to be brought into collision with the vessel upon which the lookout is located.") *See also China Union Lines v. A.O. Anderson & Co.*, 364 F.2d 769, 783 (5th Cir. 1966), *cert. denied*, 386 U.S. 933 (1967)("The question of a proper lookout is one of fact to be determined from all of the circumstances on the basis of common prudence...").

Second, as Defendants state in their motion at p. 5, a "lookout is for the purpose of seeing and advising those navigating the ship of what is in the way..."

of his vessel. (Quoting and citing from *British Columbia Mills, Tug & Bargo Co., v. MYROIE*, 259 U.S. 1, 7 (1922)). In this case, if the Court were to find that the ALBION struck an obstruction or hazard which caused it to sink, as Defendants' expert opines, a lookout of suitable experience and competence, properly stationed, and vigilantly employed in the performance of his duty would have seen and reported any dangerous hazard in ample time to avoid the casualty. Indeed, given that the crew reported that the ALBION sank in calm weather and fair seas, any object or hazard in the water such as a log or deadhead should have been readily discoverable by a vigilant lookout.

Further, Defendants contend that they had no duty to constantly monitor the ALBION, or to have one crew member do nothing but act as a lookout. The adequacy of the lookout in observing for hazards ahead of the tow or in observing the condition of the tow is a question of fact that is to be determined by the facts and circumstances of each case. *China Union Lines, Ltd. v. A.O. Anderson & co.*, 364 F. 2d 769, 783 (5th Cir. 1966); *cert denied*, 386 U.S. 933, 87 S. Ct. 955 (1967). Whether or not a dedicated lookout was required or whether or not the tug should have maintained a more vigilant watch for navigation hazards or more closely observe the ALBION during the tow will depend on the facts presented at trial. Indeed, it has been held that a pilot alone in the wheelhouse while steering the tug and tow is not a proper lookout under the circumstances. *See Tug Ocean Prince*, 584 F.2d 1151, 1160 (2nd Cir. 1978)(Master alone on the bridge; failure to post lookout when conditions required not only was negligent and contrary to good practice, it was also a violation of a statutory duty); *See also The Supply No. 4*, 109 F. 2d 101, 103 (2d Cir. 1940)(failure to have bow lookout contributed to collision); *Oil Transfer Corporation v. F.A. VERDON, INC.*, 192 F. Supp. 245, 247 (S.D.N.Y. 1960)(Captain, Mate and Helmsman all on the bridge; Court found lookout should have no other duties and that failure to have dedicated lookout on bow was factor in collision). It is axiomatic that an inefficient lookout is

9
OPPOSITION TO MOTION IN LIMINE RE: PENNSYLVANIA RULE

equivalent to none. *Sun Oil Co. v. S.S. Georgel*, 245 F. Supp. 537, 545 (S.D.N.Y. 1965).

Whether or not the tug had a proper lookout to watch for navigation hazards and obstructions, or whether or not the tug maintained a close observation of the ALBION to determine whether it was in distress is a question of fact that should be determined after the parties have presented their evidence at trial.

## VI.
## CONCLUSION

Independent of any presumption on causation or statutory violation, the evidence will establish that among other negligent acts and omissions, Defendants were negligent in failing to maintain a proper lookout of any navigation hazards, and that the tug failed to maintain a close observation and watch of the ALBION which would have alerted the tug that the ALBION was in distress. The evidence will further establish that these acts and/or omissions caused and/or contributed to the sinking of the AlBION.

This Motion in Limine seeks to preclude evidence and argument that the tug violated a statutory rule relating to proper lookout which will trigger application of the Pennsylvania Rule. If the court were to find after hearing the evidence, as Defendants' expert, James Wood opined, that the ALBION sank because it hit and was punctured by an object or hazard, the court should also determine whether the tug, in failing to see any such hazard, violated the lookout rule in the COLREGS and whether the Pennsylvania Rule should apply. Neither Rule 5 of the COLREGS nor the Pennsylvania Rule are limited to collision cases. As Defendants' concede, the lookout rule is intended to ensure that a vessel keeps a vigilant watch for navigation hazards and obstructions. Therefore, the statutory

///

lookout rule and Pennsylvania Rule may be implicated if the court were to find that the ALBION was punctured by a navigation hazard.

Since the adequacy of the lookout and watch are at issue on Plainitff's negligence claim regardless whether or not the Pennsylvania Rule applies, the court should hear the evidence and consider all the circumstances surrounding the casualty before determining whether a statutory violation occurred and the Pennsylvania Rule shifts the burden of proof on causation to Defendants.

Respectfully submitted,

Dated: April 17, 2009

COGSWELL NAKAZAWA & CHANG, LLP

By: /s/ Alan Nakazawa
Alan Nakazawa
Ken Sato
Attorneys for Plaintiffs Alan Carpenter and Tracy Ragsdale

11
OPPOSITION TO MOTION IN LIMINE RE: PENNSYLVANIA RULE